■ Allison Scher, Appellant, v Edward Scher, Respondent. [938 NYS2d 317]—

Contrary to the determination of the Supreme Court, the plaintiff was entitled to share in the appreciated value of Home Companion Services of New York, Inc. (hereinafter Home Companion Services), which the defendant incorporated approximately three years prior to the marriage. Separate property includes "property acquired before [the] marriage" (Domestic Relations Law § 236 [B] [1] [d] [1]), such as the business interest in Home Companion Services in this case, as well as "the increase in value of [such] separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse" (Domestic Relations Law § 236 [B] [1] [d] [3]). "[I]n order for appreciation in the value of separate property to be deemed marital property subject to equitable distribution, the nontitled spouse must demonstrate the manner in which his [or her] contributions resulted in the increase in value and the amount of the increase which was attributable to his [or her] efforts" (*Embury v Embury*, 49 AD3d 802, 804 [2008] [citations and internal quotation marks omitted]; see *Michelini v Michelini*, 47 AD3d 902, 903 [2008]; *Burgio v Burgio*, 278 AD2d 767, 769 [2000]; *Chan v Chan*, 267 AD2d 413, 414 [1999]; *Elmaleh v Elmaleh*, 184 AD2d 544, 545 [1992]). Here, the Supreme Court improvidently exercised its discretion in finding that the plaintiff made no direct or indirect contributions to the appreciation of Home Companion Services which resulted in the increase in the value of the company. The evidence established that the plaintiff made direct contributions to the business by serving as the company bookkeeper for approximately seven years (see *Baron v Baron*, 71 AD3d 807, 809 [2010]; *Hamroff v Hamroff*, 35 AD3d 365, 366 [2006]; *Ventimiglia v Ventimiglia*, 307 AD2d 993, 994 [2003]). The evidence further established that the defendant's active participation in expanding the business was aided and facilitated by the plaintiff's indirect contributions as homemaker and occasional caretaker of one of his children from a prior marriage (see *Hartog v Hartog*, 85 NY2d 36, 46 [1995]; *Price v Price*, 69 NY2d 8, 17-18 [1986]; *Zaretsky v Zaretsky*, 66 AD3d 885, 888 [2009]; *Chalif v Chalif*, 298 AD2d 348, 349 [2002]). Moreover, the defendant failed to establish that the plaintiff committed "wasteful dissipation" of marital assets in her role as bookkeeper (*Graves v Graves*, 307 AD2d 1022, 1023 [2003] [internal quotation marks omitted]; see *Epstein v Messner*, 73 AD3d 843, 846 [2010]; *O'Sullivan v O'Sullivan*, 247 AD2d 597 [1998]; *Strang v Strang*, 222 AD2d 975, 978 [1995]). In light of the plaintiff's direct and indirect contributions, the Supreme Court should have awarded her 20% of the appreciated value of Home Companion Services. As the parties stipulated that the appreci-

ated value over the course of the marriage amounted to $1,146,000, the plaintiff was entitled to an award of $229,200.

Furthermore, contrary to the determination of the Supreme Court, the plaintiff was entitled to an equitable share of the appreciated value of the marital residence over the course of the marriage, notwithstanding that the residence was the separate property of the defendant until March 2005, when the property was transferred to the plaintiff and defendant as tenants by the entirety. The increase in the value of separate property remains separate property "except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse" (Domestic Relations Law § 236 [B] [1] [d] [3]; *see Price v Price*, 69 NY2d 8 [1986]), at which point the increase in value becomes marital property, in accordance with the rule that the definition of marital property is to be broadly construed, given the principle that a marriage is an economic partnership (*see Mesholam v Mesholam*, 11 NY3d 24, 28 [2008]; *Price v Price*, 69 NY2d at 14-15). The parties stipulated to a neutral appraisal which found that the marital residence had increased in value by $40,000 due to "active appreciation" in the form of physical improvements, and $300,000 due to "passive appreciation" in the form of "market forces, without regard to any improvements, except normal maintenance." Since the record established that the $340,000 in appreciation was attributable to the efforts of both parties, the plaintiff was entitled to share equitably in that increased value (*see Mongelli v Mongelli*, 68 AD3d 1070, 1072 [2009]; *Kost v Kost*, 63 AD3d 798, 799 [2009]; *Kilkenny v Kilkenny*, 54 AD3d 816, 818-819 [2008]; *Cincotta v Cincotta*, 221 AD2d 306, 307 [1995]). Thus, applying the plaintiff's 50% distributive share to the $340,000 in appreciation, she is entitled to an award of $170,000 for the appreciated value in the marital residence from the date of marriage. In light of the plaintiff's contributions, the Supreme Court should have awarded the parties equal shares in the increase in the value of the marital residence. However, the plaintiff's contention that the Supreme Court improperly directed her to vacate the marital residence within 30 days has been rendered academic by the passage of time.

The Supreme Court erred in finding that the interest in Green Fields East Holding, LLC (hereinafter Green Fields), which was held in the defendant's name, was the separate property of the defendant. Domestic Relations Law § 236 defines "marital property" as "all property acquired by either or both spouses *during the marriage* and before the execution of a separation agreement or the commencement of a matrimonial action, regardless

of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c] [emphasis supplied]; *see Fields v Fields*, 15 NY3d 158, 161-162 [2010]). Likewise, "[e]xpenses incurred prior to the commencement of an action for a divorce are marital debt to be equally shared by the parties upon an offer of proof that they represent marital expenses" (*Epstein v Messner*, 73 AD3d at 845). "Where a party has paid the other party's share of what proves to be marital debt, reimbursement is required" (*id.*; *see Bogdan v Bogdan*, 260 AD2d 521, 522 [1999]). As the interest in Green Fields was acquired during the marriage and before the commencement of the instant action, it was marital property (*see* Domestic Relations Law § 236 [B] [1] [c]). Likewise, a loan in the approximate amount of $239,000 which was taken out simultaneously, was marital debt. Since the defendant established that he paid the plaintiff's share of the marital debt by satisfying the loan, reimbursement is required (*see Epstein v Messner*, 73 AD3d at 845; *see Bogdan v Bogdan*, 260 AD2d at 522). Taking the market value of the interest in Green Fields ($350,000), and applying the plaintiff's 50% distributive share thereto, she is entitled to an award of $55,500 after reimbursing the defendant the sum of $119,500 for satisfying her portion of the marital debt.

The Supreme Court erred in awarding the defendant a separate property credit in the amount of $32,719.59. Where separate property has been commingled with marital property, there is a presumption that the commingled funds constitute marital property (*see Massimi v Massimi*, 35 AD3d 400, 402 [2006]; *Wade v Steinfeld*, 15 AD3d 390, 391 [2005]; *Lynch v King*, 284 AD2d 309, 310 [2001]; *Judson v Judson*, 255 AD2d 656, 657 [1998]). However, a party may overcome this presumption "by presenting sufficient evidence that the source of the funds was separate property" (*Phillips v Haralick*, 70 AD3d 663, 665 [2010]; *see Masella v Masella*, 67 AD3d 749, 750 [2009]; *Bennett v Bennett*, 13 AD3d 1080, 1082 [2004]). Here, the defendant failed to present sufficient evidence to establish that the source of the funds in the disputed profit-sharing plan account was separate property (*see Massimi v Massimi*, 35 AD3d at 402; *Lynch v King*, 284 AD2d at 310; *Diaco v Diaco*, 278 AD2d 358, 359 [2000]).

We decline to disturb the Supreme Court's determination that the plaintiff was entitled to an award of 10% of the value of the various financial accounts delineated in the judgment of divorce, except a certain 529 college savings plan account. " 'A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown

that the court improvidently exercised that discretion, its determination should not be disturbed' " (*Aloi v Simoni*, 82 AD3d 683, 685 [2011] [internal quotation marks omitted], quoting *Schwartz v Schwartz*, 67 AD3d 989, 990 [2009]; *see Saleh v Saleh*, 40 AD3d 617, 617-618 [2007]; *Oster v Goldberg*, 226 AD2d 515 [1996]). "Moreover, where the determination as to equitable distribution has been made after a nonjury trial, the trial court's assessment of the credibility of witnesses is afforded great weight on appeal" (*Aloi v Simoni*, 82 AD3d at 685; *see Schwartz v Schwartz*, 67 AD3d at 990; *Ivani v Ivani*, 303 AD2d 639, 640 [2003]). "While the distribution of marital property must be equitable, there is no requirement that the assets be split evenly" (*Giokas v Giokas*, 73 AD3d 688, 689 [2010]; *see Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]). Considering the plaintiff's distributive award with respect to the marital residence and Home Companion Services and Green Fields, and in light of the plaintiff's direct and indirect contributions, an award of 10% of the value of the financial accounts, except the 529 college savings plan account, is equitable. Moreover, the plaintiff's contention that the Supreme Court failed to consider the marital funds which were contributed to the 529 college savings account plan when it excluded that account from the distributive award is speculative and without merit. Accordingly, we decline to disturb the provision of the judgment which directed that the defendant was to receive all the proceeds of the 529 college savings plan account.

Furthermore, "the amount and duration of maintenance is a matter committed to the sound discretion of the trial court and every case must be determined on its unique facts" (*Mazzone v Mazzone*, 290 AD2d 495, 496 [2002]; *see Mora v Mora*, 39 AD3d 829, 830 [2007]; *Buchsbaum v Buchsbaum*, 292 AD2d 553, 553-554 [2002]; *Ferraro v Ferraro*, 257 AD2d 596, 597 [1999]). "The court may order maintenance in such amount as justice requires, considering, inter alia, the standard of living of the parties during the marriage, the income and property of the parties, the distribution of marital property, the duration of the marriage, the health of the parties, the present and future earning capacity of both parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance" (*Kret v Kret*, 222 AD2d 412, 412 [1995], citing Domestic Relations Law § 236 [B] [6] [a]; *see Meccariello v Meccariello*, 46 AD3d 640, 641-642 [2007]). While there was a substantial disparity in the parties' respective incomes, "financial disparity is only one factor to consider" in determining a maintenance award (*Bernholc v Bornstein*, 72 AD3d 625, 629 [2010]). More-

over, "[a]n award of maintenance is not determined by actual earnings, but rather by earning capacity" (*Arrigo v Arrigo*, 38 AD3d 807, 808 [2007]). In light of the distribution of the marital property and the plaintiff's own testimony regarding her expenses and earning capacity, we decline to disturb the Supreme Court's determination that the plaintiff was not entitled to future maintenance payments (*cf. Kret v Kret*, 222 AD2d at 412-413).

Finally, we decline to disturb the Supreme Court's determination that the plaintiff was not entitled to an award of an attorney's fee. In light of the substantial distributive award in favor of the plaintiff, she is capable of paying for her own attorney (*see Celauro v Celauro*, 295 AD2d 388, 389 [2002]; *cf. Levy v Levy*, 4 AD3d 398, 398-399 [2004]). Rivera, J.P., Skelos, Sgroi and Miller, JJ., concur.