OPINION OF THE COURT
Richard A. Dollinger, J.
“When we assumed the Soldier, we did not lay aside the Citizen.” So said George Washington in a letter to New York’s Provincial Congress on June 26, 1775. Now, almost 240 years *923 later, this court must decide whether a soldier, who seeks a stay of his divorce proceeding under federal and state law, has an obligation as a citizen to return property and provide disclosure to his estranged wife. To reach a conclusion, the court must evaluate the breadth of an active duty servicemember’s rights under the Federal Servicemembers Civil Relief Act and the New York Military Law, and the consequences to his wife.
The wife served a summons with notice for divorce upon her husband and eventually served an amended verified complaint. In her amended complaint, the wife alleges that her husband is “in the military service of the United States,” stationed at Fort Drum in upstate New York, and that he has not been deployed outside the United States since July 2010. This matter was scheduled for a pretrial conference as required by the Uniform Rules for Trial Courts. (22 NYCRR 202.26.) The pretrial conference was held in a courtroom in the Monroe County Courthouse. The defendant appeared without counsel. The court advised the defendant of his right to retain counsel and urged him to do so, but he elected to proceed without counsel present. The court informed the defendant that because of his failure to file an answer to the complaint, he was in default and the court could award judgment to the wife based on his default.
The court engaged wife’s counsel and the defendant in a discussion over the resolution of the disputes in the underlying divorce action. The court noted that the marriage was for less than two years duration and, in view of its short term, there were no significant complications. The couple has no children; the major issues in dispute involve debt. Specifically, the wife has substantial debt, all of which accrued in her name alone. She alleges that the debt was incurred by the defendant by his use of the wife’s credit cards. There was also some dispute over the couple’s personal property. The wife alleges that the husband retained certain items of property that were either her separate property or marital property which she wants returned.
There was also a dispute regarding a truck, purchased before the start of the marriage. According to the wife, the vehicle was purchased by her for $43,000. The wife borrowed money from her pre-marriage individual retirement account to pay down the loan for the truck. As of the date of the pretrial conference, the estimated balance of the loan on the truck was $23,000 and the wife valued the truck at $35,000. The truck is titled in the wife’s name, but the husband drives the truck, and it is garaged in the husband’s residence near Fort Drum, more than 150 miles from *924 the wife’s domicile. The wife is unwilling to continue to pay the loan costs, she wants the vehicle insured by her husband, and wants the husband to refinance the car loan and she will then transfer the title to him. The wife argues that the vehicle is her separate property bought before the marriage using exclusively her own funds and that she had made all the installment payments on the vehicle. The husband, present in the courtroom when the wife’s counsel made these assertions, did not contest them. He never asserted that he had any right or title to the truck.
The wife’s attorney also asked the defendant to produce any records regarding the credit card charges on the wife’s credit card, so the wife could determine which charges were incurred for marital expenses during the marriage. The wife lists more than $36,000 in credit card accounts in her statement of net worth and she claims that she cannot identify the purchases and charges against these accounts. Wife’s counsel also asked the husband to provide several items of personal property that the wife claimed were either separate property or marital property that she wanted distributed to her. The husband asserted that he wanted to retrieve personal property in the wife’s possession, and that he would come to Rochester and pick up the property he claimed. The court ordered that the property exchange would occur no later than August 24, 2012, and that the husband needed to give his wife 48 hours notice of when he would make the exchange.
After examining the undisputed facts and listening to the respective argument, the court verbally ordered the husband to refinance the truck by August 24, 2012, or return the truck to his wife’s possession so she could sell the truck. In addition, the court ordered the husband to provide the credit card statements and accounts in his possession by August 15, 2012. The court also instructed the defendant to appear in court on September 6, 2012 to resolve any remaining issues in the case.
The date set by the court during the pretrial conference for delivery of the truck came and went. The truck was not delivered as directed and there is no evidence before the court that the husband refinanced the truck. The credit card statements were not provided and the items of personal property not exchanged. The wife’s counsel then asked this court to sign an order for the husband to return the truck in good working order or, if he failed to deliver it, then permitting the wife to retrieve the vehicle. The requested order also required the husband to return a list of separate property.
*925 In response, the husband provided this court with a letter, received on August 20, 2012, in which he states that he is currently in military training and “my military service prevents me from appearing” in court. He asserted his “rights under the Service Members Civil Relief Act” and requested a stay of all proceedings, and an extension of time to file an answer for a period not less than 90 days. He added that he was participating in military training for which leave is not authorized. The defendant included a letter from his “commanding officer” which he stated verifies “that my current duties prevent my appearance until at least November 14, 2012.”
The commanding officer’s letter is addressed to the court and identifies the defendant as a soldier under his command. The letter indicates that the officer knew that the defendant had been ordered to “exchange property” by August 24, 2012. The letter states that the defendant’s “ability to appear is materially affected by his military service” as the defendant was participating in required military training exercises and leave is not currently authorized. The commander suggests that the defendant was requesting “a stay in the proceedings until a time when his military service does not materially affect his ability to fulfill his civil obligation.”
In view of this request, this court needs to resolve whether it can sign an order requiring the return of the truck and the personal property in the face of the soldier’s application for a “stay” of proceedings under the Federal Servicemembers Civil Relief Act and, although not requested by the soldier, whether New York’s Military Law similarly bars the issuance of the repossession order. In addition, this court needs to resolve whether it can order the servicemember’s compliance with disclosure requests even if the court stays any further court appearances. Both of these questions appear to be without precedents in any other federal or state courts.[1]
The Servicemembers Civil Relief Act applies if the defendant is in military service and has received notice of the proceeding. *926 (50 USC Appendix § 522.) The statute requires this court, upon application by the servicemember, to stay the action if the servicemember attests in writing that his “current military duty requirements materially affect the servicemembers’ ability to appear” and the member’s commanding officer makes a similar written statement. (50 USC Appendix § 522 [b] [1], [2].) The stay shall persist for not less than 90 days. The stay may be extended beyond 90 days upon further application and the court is empowered, if it denies an additional stay, to appoint counsel for the servicemember. (Id.; Nakayama v Cameron, 2007 WL 1147315, 2007 Haw App LEXIS 263 [Ct App, Apr. 16, 2007, No. 27746].) The exception, inherent in the language of the statute, is that the stay may be denied if, in the opinion of the court, “the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.” (Former 50 USC Appendix § 521; see Military Law § 304.)
New York’s Military Law reaches even further than the federal statute, although the stay language nearly mirrors the terms of the federal law. (Goot v Board of Educ. of Waterford Halfmoon High School, 82 AD2d 985 [3d Dept 1981] [the New York State act is similar in form to the Federal Soldiers’ and Sailors’ Civil Relief Act of 1940 (former 50 USC Appendix § 521) and should be interpreted similarly]; Wuster v Levitt, 268 App Div 926, 927 [2d Dept 1944].) Section 304 of the Military Law provides, in pertinent part:
“At any stage thereof, any action or proceeding in any court or in any adjudicatory . . . proceeding before any state agency, including any . . . public authority ... in which a person in military service is involved as a party, during the period of such service or within sixty days thereafter . . . shall, on application to it by such person or some person on his behalf, be stayed . . . unless, in the opinion of the court or adjudicatory . . . agency, the ability of plaintiff to prosecute the action, or the defendant to conduct his defense, or in any adjudicatory . . . proceeding the ability of the party to represent his interest, is not materially affected by reason of his military service.” (Military Law § 304; Jusino v New York City Hous. Auth., 255 AD2d 41 [1st Dept 1999].)
The statutes also share another characteristic. Each has several sections that deal with specific types of claims against ser *927 vicemembers. The federal law specifically deals with claims related to leases, automobile retail sales, mortgages, installment contracts, and other interest bearing obligations. (See Pottorff, supra at 116-117 nn 8-10, 123-135, citing 50 USC Appendix § 521 et seq.) The Military Law contains similar broad categories of claims that are impacted by its provisions: § 305 (relief from fines and penalties), § 308-a (waiver of continuing education requirements), § 309 (evictions), § 310 (lease terminations) and § 311 (installment purchases). However, in neither statute does the language deal with matters involving divorce proceedings, equitable distribution of marital property, return of property or the servicemember’s participation in disclosure in a matrimonial proceeding.[2] The court draws no firm conclusion from these specific legislative commands other than neither the Congress nor the New York State Legislature has specifically directed that the stay available under either statute was intended to apply to turnover proceedings or bar disclosure participation in divorce actions.
While the statutes have seemingly long arms, the New York courts have suggested that they have discretion in granting the stay. In Wuster v Levitt (268 App Div 926, 926-927 [1944]), the Second Department, writing during the Second World War, noted:
“Under the decision of the United States Supreme Court in Boone v. Lightner (319 U.S. 561) considerable discretion is vested in the trial courts in the determination of motions of this character. However, the rule there is stated to be that the Soldiers’ and Sailors’ Civil Relief Act (U.S. Code, tit. 50, Appendix, § 501 et seq.) is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation, and that the discretion that is vested in trial courts to that end is not to be withheld on nice calculations.”
While “nice calculations” are not sufficient to deny a stay, a claim of substantial prejudice to another party would clearly qualify. The Supreme Court in Boone v Lightner made that point clear: the stay would be conditioned, in part, on what “preju *928 dice” to the non-military party might occur as a result of the stay. (Boone v Lightner, 319 US 561, 569 [1943].) In that respect, this court has an obligation to balance the substantial and respected rights of a member of the military service under state and federal law with the right of this wife to reclaim her own property and avoid substantial additional costs. (Nerkowski v Nerkowski, 2006 WL 2734301, *1, 2006 Conn Super LEXIS 2706, *2 [Super Ct, Sept. 14, 2006, No. FA064022551S] [husband could not “viably invoke the protection of law to escape the financial obligations” to his spouse and the court declined to stay the sale of the marital residence].)
Importantly, the critical language in the statutes is the phrase “materially affect” as a description of the consequences of the husband’s absence from court proceedings. In Coburn v Coburn (412 So 2d 947, 949 [Ct App Fla 1982]), the court held that matters relating to custody, permanent support, and attorney’s fees in a divorce action would be stayed because the court could not find as a matter of discretion that the servicemember’s case was “not hampered by his absence.” The same court also stated:
“This necessarily involves an element of prejudice, which is essential to the granting of a stay. In this latter regard, the courts have considered and weighed the nature of the case, the issues involved, the extent to which his rights may or may not be ‘materially affected’ by his absence, his availability at trial and the diligence with which he takes advantage of the opportunities to preserve his rights that might have been afforded him during the course of the litigation, in determining whether or not he will be prejudiced by the denial of a stay.” (Robbins v Robbins, 193 So2d 471, 473 [Ct App Fla 1967] [emphasis omitted]; see also Cadieux v Cadieux, 75 So 2d 700 [Sup Ct Fla 1954] [denying a stay because the ability of the defendant to conduct his defense was not, in fact, materially affected by reason of his military service, and his personal presence had not been shown to be indispensable to the defense of his cause].)
If the military service “materially affects” the servicemember’s defense or his ability to present defenses before the court, then the court’s discretion to deny a stay is lessened. But, if the absence for military service does not “materially affect” the servicemember’s case, the rationale for a stay under the federal statute diminishes. (Hackman v Postel, 675 F Supp 1132 [1988] *929 [stay is not mandated simply because the moving party is in the military service because courts interpreting the statute have observed that, for the movant to invoke its protection, he must make a showing of his actual unavailability and that his rights would be adversely affected by virtue of his absence from trial].) At least one New York court has held that the federal statute was enacted to “prevent default judgments from being entered against military personnel without their knowledge” and once the servicemember knew of the action, the litigant was “no longer entitled to further benefits.” (Matter of Roslyn B. v Alfred G., 222 AD2d 581, 582 [1995].)
The same discretion in considering whether military service “materially affects” the servicemember’s case applies in the New York Military Law. In M&T Mtge. Corp. v Foy (15 Misc 3d 1148[A], 2007 NY Slip Op 51199[U], *3 [Sup Ct, Kings County 2007]), the court noted that the law should be broadly construed but not “employed as a means of enabling one who has flouted his obligations in civilian life to obtain indefinite delay or to cancel his just liabilities.” Another court intones that the Military Law “should not be used where there is no merit to inflict hardship upon others not in the armed forces.” (Meyers v Schmidt, 181 Misc 589, 591 [Columbia County Ct 1944]; see Carrasquillo v City of New York, 236 AD2d 576 [2d Dept 1997] [stay denied because the servicemember could communicate with his counsel regarding his defense]; Warshawsky v Warshawsky, 215 AD2d 374 [2d Dept 1995] [stay denied where no material effect on the servicemember’s ability to litigate a matter]; Guzman v Warenda, 161 AD2d 1017 [3d Dept 1990] [stay denied because there was no evidence that the ability to prosecute an action would be materially affected by reason of military service]; Turchiano v Jay Dee Transp., 109 AD2d 790, 791 [2d Dept 1985] [section 304 “was not intended to give a litigant, even though in military service, complete immunity from claims arising as a result of his civilian life and activities”].) In short, as one court noted, the purposes of the federal and state law overlap, and there is discretion in both statutes:
“Comparative analysis of sections 200 and 201 of the Soldiers’ and Sailors’ Civil Relief Act indicates that while section 200 certainly aims to prevent default judgments from being obtained against members of the military, section 201 permits the court to order a case forward if the military service does not materially affect the party’s ability to proceed. In point of fact, the aim of sections 200 [of *930 the federal law] and 303 [of the Military Law] was not in a blunderbuss fashion to protect members of the military from having a default judgment entered against them but to protect them from having default judgments entered against them without their knowledge or when unable to defend themselves.” (Cornell Leasing Corp. v Hemmingway, 147 Misc 2d 83, 86-87 [Civ Ct, Kings County 1990] [citation and emphasis omitted].)
In that regard, a close examination of the stay sought in this case leads to the conclusion that this servicemember is simply seeking a stay of any court appearances until November 14, 2012. The letter from the servicemember and his commanding officer specifically references the servicemember’s inability to attend court dates. Because the servicemember’s letter specifically references the “inability to appear,” this court grants the servicemember’s application to stay the appearances scheduled by the court.
However, the application before the court does not seek a stay from a requirement that the servicemember deliver the goods sought by the wife or participate in discovery. The commanding officer’s letter acknowledges that the servicemember was “ordered to exchange property,” but he adds only that the servicemember’s “ability to appear is materially affected by his military service.” The commanding officer does not suggest that the husband, as a result of his training and inability to obtain leave, is forbidden or restrained from turning over the requested personal property or the truck. There is no allegation in either letter that the husband, between now and November 14, 2012, would be stationed for duty outside the United States or, for that matter, outside Fort Drum (in northern New York) and therefore unable to deliver these goods to his wife. There is no statement in the request for a stay by the husband or his commanding officer suggesting that the husband cannot cooperate with his wife if she appears at Fort Drum to repossess the truck. There is simply no evidence, in the application letter or the commanding officer’s letter, that the husband’s military service will “materially affect” his ability to return the truck or impede his wife’s right to repossess the truck.
Furthermore, the wife’s repossession of the truck does not prejudice the husband. During the appearance in Supreme Court, the husband acknowledged that the truck was purchased using his wife’s pre-marriage money, the truck was titled in her *931 name, she paid the monthly installment payment on the truck and she was paying the insurance.[3] At that time, in the courtroom, the court ordered the husband to return the truck or refinance it and take over the insurance and the payments. Under these circumstances, the truck was the wife’s separate property, and although she had permitted him to use the vehicle, the husband has no marital interest in the truck. The refusal to grant a stay, in this instance, does not harm the husband’s interest in the resolution of his disputes over marital property because he has no right to claim any marital interest in the truck.[4] Conversely, the wife faces the prospect, if she is unable to repossess the truck, of continuing to pay the monthly installments and the insurance, all the while facing the possibility as the owner of the vehicle, she could be liable for any negligence in the husband’s operation of the vehicle. (Vehicle and Traffic Law § 388; Mikelinich v Caliandro, 87 AD3d 99 [2d Dept 2011].)
Finally, this court notes that the servicemember is not geographically distant from Monroe County, a factor in determining whether a stay of all aspects of the proceeding is appropriate. (Greco v Renegades, Inc., 307 AD2d 711, 713 [4th Dept 2003] [stay vacated if litigant can establish that military defendant was assigned to a geographical location or position that would not “materially affect” his ability to defend the action]; Short v Rapping, 135 AD2d 624, 624 [2d Dept 1987] [appellant may seek to vacate the imposed stay if the infant plaintiff is reassigned by the United States Army to a geographical location and/or position which would not “materially affect” her ability to pursue her claim against him]; Cornell Leasing Corp. v Hemmingway, 147 Misc 2d at 87 [noting geographic “proximity” to the court as a factor in deciding a stay application].) Fort Drum is approximately 175 miles from this courthouse and, if the wife is willing to drive to pick up the truck and her other property, the husband, who admits he has no interest in those properties, should be required to turn them *932 over now. In addition, the order to provide disclosure of the credit card purchases is not impacted by the defendant’s military service. The husband can review the statements and provide information on his purchases through the Internet or other resources. He does not have to take any leave in order to accomplish this task, and can forward the results to the wife’s counsel.
This court accords the husband admiration and respect for his contribution to the nation’s defense, but it cannot overlook his wife’s right to minimize costs and her potential exposure with respect to the truck and her personal property. This court will not require the husband to appear in Rochester for any further proceedings until November 14, 2012, and will also not require him to travel to Rochester to deliver the truck or any of the requested personal belongings. This court will sign an order requiring the husband to deliver his keys to his wife when she goes to Fort Drum to collect her vehicle, and will further require him to give the wife the personal property items that she has requested. There is no evidence that making these items available will be impeded by the servicemember’s military duty. The court also orders the husband to provide a written accounting for the credit card purchases he made on the wife’s credit cards during the marriage.
The court needs a deadline for the transfer of the truck, the exchange of personal property, and the delivery of the requested disclosure. The court selects Friday, October 19, 2012. The court will send a copy of this opinion via electronic mail to the husband and by regular mail to his commanding officer. The wife’s counsel should serve both officials by similar means no later than October 12, 2012.

. The court has extensively researched the issues related to the stay under state and federal law. Most of the cases are “all-or-nothing” decisions: the stay of all proceedings is either granted or denied. This court cannot find any cases granting a stay of the proceedings, but requiring the servicemember to comply with disclosure and return of property orders. (See generally Pottorff, Contemporary Applications of the Soldiers’ and Sailors’ Civil Relief Act, 132 Mil L Rev 115 [Spring 1991].) The court notes that there are New York cases which discuss a servicemember’s attendance at depositions and how the stay impacts his required attendance. (Griffith v Ronshen, 4 Misc 2d 845 [New York City Ct 1956].)

. Despite the absence of any reference to divorce litigation, this court readily acknowledges that the stay, under either statute, has been applied to prevent default divorces from being granted against servicemembers. (Matter of Roslyn B. v Alfred G., 222 AD2d 581 [2d Dept 1995]; Boelsen v Boelsen, 182 Misc 361 [Sup Ct, Queens County 1944].)

. In view of these factors, it is undisputed that the truck, acquired before the marriage, would be the wife’s separate property under New York law. (Scher v Scher, 91 AD3d 842 [2d Dept 2012]; Armstrong v Armstrong, 72 AD3d 1409 [3d Dept 2010].)

. Even if some portion of the equity of the truck were determined to be marital property, the husband would suffer no prejudice if the truck were repossessed, as this court would equitably distribute any marital assets after the stay is lifted in November 2012. In all likelihood, any net equity in the truck would be used to pay off marital debt.