■ LAURA MADDALONI, Respondent, v LUIGI MADDALONI, Appellant. (Appeal Nos. 1-4.) LAURA MADDALONI, Appellant, v LUIGI MADDALONI, Respondent. (Appeal No. 5.) [36 NYS3d 695]—

Appeals by the defendant from four orders of the Supreme Court, Suffolk County (Carol MacKenzie, J.), dated October 1, 2013 (two orders), December 3, 2013, and May 20, 2014, and appeal by the defendant and cross appeal by the plaintiff from stated portions of a judgment of divorce of that court entered May 19, 2014. The first order dated October 1, 2013 granted the plaintiff's motion for an award of temporary maintenance. The second order dated October 1, 2013 granted the plaintiff's motion for an award of counsel fees. The order dated December 3, 2013 granted the plaintiff's motion for an award of additional counsel fees. The order dated May 20, 2014, insofar as appealed from, granted those branches of the plaintiff's motion which were to hold the defendant in civil contempt and to award the plaintiff $2,500 in counsel fees pursuant to Domestic Relations Law § 237 (c). The judgment of divorce, upon a decision of that court dated February 6, 2014, made after a nonjury trial, inter alia, awarded the plaintiff the sum of $500,000, representing 25% of the appreciation of the defendant's business known as Maddaloni Jewelers, and monthly maintenance for a period of 10 years, and distributed the parties' assets.

Ordered that the appeals from the two orders dated October 1, 2013, and the order December 3, 2013, are dismissed, without costs or disbursements; and it is further, ordered that the order dated May 20, 2014 is reversed insofar as appealed from, on the law, without costs or disbursements, and those branches of the plaintiff's motion which were to hold the defendant in civil contempt and to award the plaintiff $2,500 in counsel fees pursuant to Domestic Relations Law § 237 (c) are denied; and it is further, ordered that the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

The appeals from the two orders dated October 1, 2013, and the order dated December 3, 2013, must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment of divorce (see Matter of Aho, 39 NY2d 241, 248 [1976]; Anderson v Anderson, 50 AD3d 610, 610 [2008]). These three orders, which awarded pendente lite maintenance and counsel fees to the plaintiff, are not reviewable on the appeal from the judgment of divorce under CPLR 5501 because, if reversed or modified, they would not necessarily affect the judgment (see Anderson v Anderson, 50 AD3d at 610; Mellen v Mellen, 260 AD2d 609, 611 [1999]; Samuelsen v Samuelsen, 124 AD2d 650, 651 [1986]; cf. Oakes v Patel, 20 NY3d 633, 643-645 [2013]). In any event, the financial circumstances of the parties were fully explored at trial, which is the appropriate remedy for any perceived inequity in a pendente lite award of maintenance (see Anderson v Anderson, 50 AD3d at 610; Samuelsen v Samuelsen, 124 AD2d at 652; Zoda v Zoda, 121 AD2d 380 [1986]).

The parties in this action for a divorce and ancillary relief were married in January 1988. At the time of the marriage, the defendant owned several cars, a house, and a jewelry business, and he was in contract to buy a shopping center. On August 22, 1988, less than eight months after the parties were married, they experienced marital difficulties and entered into a postnuptial agreement. Among other things, this agreement provided that, in the event that the parties divorced after the first five years of marriage, the plaintiff agreed to accept the sum of $50,000, payable in five equal annual installments of $10,000, "in full satisfaction of any and all claims of whatsoever kind and nature she may have at that time for past or future support or for distribution of assets."

Thereafter, the parties reconciled and remained married for more than 25 years. They had two children, who were emancipated by the time of the trial.

The plaintiff commenced this divorce action on March 16, 2011. A hearing with regard to the validity of the 1988 postnuptial agreement commenced on August 9, 2011, but the parties agreed to adjourn the matter so that they could pursue reconciliation. Shortly thereafter, on September 28, 2011, the parties executed an amendment to the 1988 postnuptial agreement. On December 5, 2012, well over a year later, the hearing with regard to the validity of the 1988 postnuptial agreement resumed. The validity of the 2011 amendment to the postnuptial agreement was not addressed at the hearing; that issue was later referred to trial. After the hearing, the Supreme Court upheld the separate property provisions of the 1988 postnuptial agreement. However, the court determined that the $50,000 maintenance provision in that agreement, which purported to be in full satisfaction of all claims, was unenforceable on the ground that it was unconscionable.

Thereafter, the Supreme Court conducted a nonjury trial, which commenced on September 11, 2013 and concluded on October 25, 2013. Following the trial, the court issued a 31-page decision dated February 6, 2014, which was denominated an "order." The court determined that the 2011 amendment to the postnuptial agreement was invalid and of no force and effect because, among other reasons, the amendment lacked consideration and the defendant and his counsel engaged in unethical overreaching when the defendant delivered the 2011 amendment directly to the plaintiff rather than her counsel. The court further found, among other things, that the plaintiff's testimony was credible, but the defendant's testimony and documentary evidence lacked credibility. Significantly, the court concluded that the defendant's real income was greater than what was claimed on his tax returns, and imputed income to the defendant of "at least $600,000 per year." With regard to the appreciation of Maddaloni Jewelers, one of the defendant's businesses, the court found that the 1988 postnuptial agreement was silent as to equitable distribution of the appreciation of the business, and that the plaintiff established that she made significant direct and indirect contributions to the value of Maddaloni Jewelers during the marriage.

After the Supreme Court issued its decision after trial, which was denominated an "order," the plaintiff moved, inter alia, to hold the husband in contempt for his failure to comply with certain provisions of the decision. The defendant opposed the motion, arguing that the paper dated February 6, 2014 was a decision, not an order, and thus the plaintiff's contempt motion was premature.

Based on its findings in the decision dated February 6, 2014, the Supreme Court entered a judgment of divorce that, among other things, awarded the plaintiff the sum of $500,000, representing 25% of the appreciation of Maddaloni Jewelers, and monthly maintenance for a period of 10 years.

One day after the judgment of divorce was entered, in an order dated May 20, 2014, the Supreme Court granted the plaintiff's motion to hold the defendant in contempt, finding that the paper dated February 6, 2014 was indeed an order, and that the defendant failed to comply with its specific directives.

The defendant appeals, and the plaintiff cross-appeals, from stated portions of the judgment of divorce. The defendant also appeals from so much of the order dated May 20, 2014 as granted those branches of the plaintiff's motion which were to hold him in civil contempt and to award the plaintiff $2,500 in counsel fees. We affirm the judgment of divorce insofar as appealed and cross-appealed from, and reverse the order dated May 20, 2014, insofar as appealed from.

The 1988 Postnuptial Agreement and the 2011 Amendment

Domestic Relations Law § 236 (B) (3) provides that "[a]n agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." Such an agreement may include, inter alia, a "provision for the amount and duration of maintenance or other terms and conditions of the marriage relationship . . . provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment" (Domestic Relations Law § 236 [B] [3]). "An unconscionable bargain is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense" (*Morad v Morad*, 27 AD3d 626, 627 [2006]; *see Christian v Christian*, 42 NY2d 63, 71 [1977]; *Label v Label*, 70 AD3d 898, 899 [2010]).

Here, the Supreme Court properly determined that the maintenance provision of the 1988 postnuptial agreement, which provided the plaintiff with only $50,000 in full satisfaction of all claims, would be unconscionable by the time a final judgment would be entered in this action. At the time that the parties executed the 1988 postnuptial agreement, the defend-

ant owned, among other things, a jewelry business worth at least $3 million, and he was in contract to buy a shopping center. Thereafter, during more than 25 years of marriage, the defendant's jewelry business underwent tremendous growth while the plaintiff worked there, and the parties lived what can easily be described as a lavish lifestyle. Among other things, they owned numerous high-end automobiles and took numerous international vacations. For a time, they traveled regularly to the Bahamas on the defendant's yacht. Under all the circumstances, the court properly determined that the maintenance provision in the 1988 agreement was unconscionable and, thus, unenforceable (*see Libert v Libert*, 78 AD3d 790, 792 [2010]; *see also Smith v Smith*, 129 AD3d 934, 935 [2015]; *cf. Gottlieb v Gottlieb*, 138 AD3d 30, 47 [2016]; *Label v Label*, 70 AD3d at 899).

Further, the Supreme Court properly determined that the 2011 amendment was manifestly unfair to the plaintiff due to the nature and magnitude of the rights that she waived and the vast disparity in the parties' income and net worth (*see Petracca v Petracca*, 101 AD3d 695 [2012]; *O'Malley v O'Malley*, 41 AD3d 449, 451 [2007]; *Siclari v Siclari*, 291 AD2d 392, 392-393 [2002]), and the defendant's overreaching in presenting the amendment directly to the plaintiff for execution during the pendency of this action notwithstanding that she was represented by counsel (*see Smith v Smith*, 129 AD3d at 935). Accordingly, the court properly set aside the 2011 amendment (*see Christian v Christian*, 42 NY2d 63, 72-73 [1977]; *Barchella v Barchella*, 44 AD3d 696, 697 [2007]).

Equitable Distribution

Contrary to the defendant's contention, the Supreme Court properly awarded the plaintiff the sum of $500,000, representing 25% of the appreciation of Maddaloni Jewelers during the course of the marriage. An increase in the value of separate property is considered separate property "except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse" (Domestic Relations Law § 236 [B] [1] [d] [3]; *see* Domestic Relations Law § 236 [B] [3]). While spouses are free to opt out of that general rule, "the intent to override the rules of equitable distribution—whether by express waiver, or by specifically designating as separate property assets that would otherwise be considered marital property under New York law—must be clearly evidenced by the writing" (*Tietjen v Tietjen*, 48 AD3d 789, 791 [2008]; *see Strong v Dubin*, 75 AD3d 66, 68 [2010]).

Here, pursuant to the operative provisions of the 1988

postnuptial agreement, the plaintiff waived her right to the defendant's separate property. However, the agreement neither expressly nor implicitly refers to a waiver of her right to an increase in value of the defendant's separate property, including Maddaloni Jewelers, to the extent that such appreciation was due to her contributions (*see* Domestic Relations Law § 236 [B] [1] [d] [3]). Moreover, the agreement did not effect a mutual waiver of the parties' equitable distribution rights generally (*cf. Vendome v Vendome*, 41 AD3d 837 [2007]). Accordingly, the Supreme Court properly determined that the increase in value of Maddaloni Jewelers during the marriage, which was due in part to contributions by the plaintiff, was marital property subject to equitable distribution (*see Tietjen v Tietjen*, 48 AD3d at 791; *Siclari v Siclari*, 291 AD2d at 393).

"A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (*Schwartz v Schwartz*, 67 AD3d 989, 990 [2009] [internal quotation marks omitted]; *see Scher v Scher*, 91 AD3d 842, 846-847 [2012]; *Aloi v Simoni*, 82 AD3d 683, 685 [2011]). "Moreover, where the determination as to equitable distribution has been made after a nonjury trial, the trial court's assessment of the credibility of witnesses is afforded great weight on appeal" (*Aloi v Simoni*, 82 AD3d at 685; *see Scher v Scher*, 91 AD3d at 847). Here, contrary to the defendant's contention, the evidence at trial supported the Supreme Court's determination that the plaintiff made substantial direct and indirect contributions to the appreciation in value of Maddaloni Jewelers. Among other things, there was testimony that the plaintiff worked at Maddaloni Jewelers four or five days a week for more than 20 years, performed all of the administrative tasks, set up the bookkeeping and advertising departments, and organized about 12 trunk shows per year. Moreover, the defendant's testimony demonstrated that the value of Maddaloni Jewelers increased by at least $2 million during the course of the marriage. Accordingly, the court providently exercised its discretion in determining that the plaintiff was entitled to 25% of the appreciation of Maddaloni Jewelers, and in awarding her the sum of $500,000 (*see* Domestic Relations Law § 236 [B] [1] [c]; *Price v Price*, 69 NY2d 8, 17-18 [1986]).

Contrary to the defendant's contention, the Supreme Court properly directed that the marital residence, titled in the name of both parties, be sold, and that the net proceeds be equally divided, as the postnuptial agreement provided that marital

property included real property acquired after the marriage in the event that both parties' names appeared on the deed or title. Further, the court properly determined that, pursuant to the 1988 postnuptial agreement, a certain parcel of vacant land, a Ferrari, and a Mercedes SL550 were partially purchased with joint funds, and thus constituted marital property subject to equitable distribution.

The defendant's contention that he was entitled to a separate property credit for his contributions to the marital residence, the parcel of vacant land, the Ferrari, and the Mercedes SL550 is without merit. Although a party is generally entitled to a credit for any contribution of separate property utilized toward the purchase of a marital asset, the partial use of separate funds to acquire a marital asset does not mandate that a credit for separate funds be given (*see Beardslee v Beardslee*, 124 AD3d 969, 969 [2015]; *Vertucci v Vertucci*, 103 AD3d 999, 1003 [2013]; *see also Fields v Fields*, 15 NY3d 158, 166-168 [2010]). Moreover, where separate property has been commingled with marital property, there is a presumption that the commingled funds constitute marital property (*see Scher v Scher*, 91 AD3d at 846; *Massimi v Massimi*, 35 AD3d 400, 402 [2006]). Here, the defendant's separate property was, to some extent, used to purchase the subject real property and vehicles. However, the evidence at trial clearly demonstrated that, with respect to these items, the defendant's separate property had been commingled with marital property. Among other things, the Supreme Court correctly determined that the purchase of the vacant land and Ferrari was accomplished using money from a home equity line of credit taken against the marital residence. The defendant failed to present sufficient evidence tracing the source of any funds used to purchase the assets at issue to his separate property (*see Robinson v Robinson*, 133 AD3d 1185 [2015]). In any event, under all the circumstances presented, the court providently exercised its discretion in declining to award the defendant a credit for any separate property contributions with respect to these assets (*see Fields v Fields*, 15 NY3d at 167-168; *Murray v Murray*, 101 AD3d 1320, 1321 [2012]; *Fehring v Fehring*, 58 AD3d 1061, 1063 [2009]).

Contrary to the defendant's contention, the Supreme Court did not err with respect to the distribution of certain items of jewelry. Gifts from one spouse to the other are marital property subject to equitable distribution (*see Smithie v Smithie*, 122 AD3d 719, 720 [2014]; *Ferina v Ferina*, 286 AD2d 472, 474 [2001]; *Chase v Chase*, 208 AD2d 883, 884 [1994]). Here, based in part on its credibility determinations, the court properly

determined that certain items of jewelry were gifts to the plaintiff during the marriage and, thus, this jewelry was marital property subject to equitable distribution. Further, the court providently exercised its discretion in awarding each of the parties a one-half interest in this jewelry.

Contrary to the defendant's contention, the Supreme Court providently exercised its discretion in determining that the plaintiff was entitled to retain a pendant which utilized diamonds from her mother's and grandmother's engagement rings, as well as a diamond from the defendant.

Contrary to the plaintiff's contention on her cross appeal, the Supreme Court did not err in declining to award her a one-half interest in certain accounts that were solely in the defendant's name, because the evidence at trial supported a determination that these accounts were funded with his separate property (cf. Signorile v Signorile, 102 AD3d 949, 950 [2013]). Moreover, the court properly determined that, pursuant to the operative provisions of the postnuptial agreement, a 2008 Bentley motorcar and a 60-foot yacht were the defendant's separate property and, thus, not subject to equitable distribution. Contrary to the plaintiff's contention, the evidence at trial supported the court's determination that the Bentley and the yacht were purchased with the defendant's separate funds.

The Supreme Court's Maintenance Award

As set forth above, the Supreme Court properly determined that the maintenance provision in the 1988 agreement was unenforceable. Pursuant to the provisions of Domestic Relations Law § 236 (B) (6) (a) that were in effect at the time of the parties' divorce, except where there is a valid agreement with respect to maintenance, the court may order maintenance "in such amount as justice requires" (Domestic Relations Law former § 236 [B] [6] [a]). The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts (see Perdios v Perdios, 135 AD3d 840, 842 [2016]; Hannan v Hannan, 116 AD3d 660, 661 [2014]; Levitt v Levitt, 97 AD3d 543, 544 [2012]). In setting the amount and duration of maintenance, the court should consider, among other things, "the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, [and] the reduced or lost earning capacity of the party seeking maintenance" (Gordon v Gordon, 113 AD3d 654, 654-655 [2014]; see Gillman v Gillman,

139 AD3d 667 [2016]). "In general, an award of maintenance should be of a duration sufficient to permit the recipient to achieve economic independence" (*Gillman v Gillman*, 139 AD3d at 670, citing *O'Brien v O'Brien*, 66 NY2d 576, 585 [1985]).

Here, contrary to the defendant's contention, the Supreme Court considered the relevant statutory factors, including the income and assets of the parties, the long duration of the marriage, the plaintiff's extended absence from the work force outside of her employment at Maddaloni Jewelers, and the parties' predivorce standard of living, and providently exercised its discretion in awarding maintenance to the plaintiff for a period of 10 years (*see* Domestic Relations Law former § 236 [B] [6] [a]; *Hartog v Hartog*, 85 NY2d 36, 50-52 [1995]; *Levitt v Levitt*, 97 AD3d at 544; *cf. D'Iorio v D'Iorio*, 135 AD3d 693, 696 [2016]). In light of its credibility determinations, which we find no reason to disturb, the court providently exercised its discretion in imputing income to the defendant in the sum of at least $600,000 per year (*see Dochter v Dochter*, 118 AD3d 665, 665 [2014]; *DiPalma v DiPalma*, 112 AD3d 663, 664-665 [2013]).

The defendant's remaining contentions with respect to the judgment of divorce are without merit.

Accordingly, we affirm the judgment of divorce insofar as appealed and cross-appealed from.

### The Contempt Finding

In matrimonial actions, Domestic Relations Law § 245 grants the court authority to punish a party for civil contempt pursuant to Judiciary Law § 756 where the party defaults "in paying any sum of money" required by a judgment or order, "and it appears presumptively, to the satisfaction of the court, that payment cannot be enforced" pursuant to the enforcement mechanisms provided in Domestic Relations Law §§ 243 and 244 and CPLR 5241 and 5242 (*see Rhodes v Rhodes*, 137 AD3d 890, 891 [2016]; *El-Dehdan v El-Dehdan*, 114 AD3d 4, 22-23 [2013], *affd* 26 NY3d 19 [2015]). To prevail on the motion, the movant must demonstrate by clear and convincing evidence that the party charged with contempt disobeyed a clear and unequivocal court order, of which the party had knowledge, and that the movant was prejudiced thereby (*see* Judiciary Law § 753 [A] [3]; *El-Dehdan v El-Dehdan*, 26 NY3d at 28-29; *Cutroneo v Cutroneo*, 140 AD3d 1006 [2016]). Under the circumstances of this case, the Supreme Court erred in holding the defendant in contempt of its "order" dated February 6, 2014, which was, in fact, the decision after trial, upon which the judgment of divorce was based (*cf. Matter of Vernon D. [Tarah F.]*, 119 AD3d 784, 784 [2014]; *Matter of North*

*Tonawanda First v City of N. Tonawanda*, 94 AD3d 1537, 1538 [2012]). Thus, the court should have denied those branches of the plaintiff's motion which were to hold the defendant in contempt and to award her $2,500 in counsel fees pursuant to Domestic Relations Law § 237 (c). Mastro, J.P., Dillon, Hinds-Radix and Maltese, JJ., concur.