Belilos v Rivera (2018 NY Slip Op 06223)





Belilos v Rivera


2018 NY Slip Op 06223


Decided on September 26, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 26, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
RUTH C. BALKIN
SYLVIA O. HINDS-RADIX
ANGELA G. IANNACCI, JJ.


2016-00440
 (Index No. 202181/10)

[*1]Elise Belilos, respondent-appellant, 
v
Luis R. Rivera, appellant-respondent.


Arza Rayches Feldman, Uniondale, NY (Steven Feldman of counsel), for appellant-respondent.
Law Offices of Kenneth J. Weinstein, P.C., Garden City, NY (Judah Serfaty of counsel), for respondent-appellant.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals, and the plaintiff cross-appeals, from a judgment of divorce of the Supreme Court, Nassau County (Jeffrey A. Goodstein, J.), entered October 29, 2015. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated November 18, 2014, made after a nonjury trial, an order of the same court dated March 3, 2015, and a stipulation of the parties so-ordered by the same court on September 2, 2015, (a) awarded the plaintiff maintenance in the sum of $5,000 per month for five years, (b) deducted from the distribution to the defendant of certain funds held in escrow the sum of $150,000 as the plaintiff's separate property from inheritance, and distributed that sum to the plaintiff, (c) awarded the plaintiff 25% of the value of the defendant's enhanced earning capacity, (d) distributed to the plaintiff one-half of the value of the defendant's interests in certain business entities that performed billing services for his medical practice group, and (e) awarded the plaintiff the sums of $75,000 for counsel fees and $15,000 for expert fees. The judgment of divorce, insofar as cross-appealed from, awarded the plaintiff maintenance in the sum of only $5,000 per month for five years, and awarded the plaintiff the sums of only $75,000 for counsel fees and $15,000 for expert fees.
ORDERED that the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
A married party's inheritance constitutes separate property that is not subject to equitable distribution (see Culen v Culen, 157 AD3d 926, 929; Renck v Renck, 131 AD3d 1146, 1148). Where, however, as here, "separate property has been commingled with marital property [in a joint marital account], there is a presumption that the commingled funds constitute marital property" (Maddaloni v Maddaloni, 142 AD3d 646, 652; see Renck v Renck, 131 AD3d at 1148; Chamberlain v Chamberlain, 24 AD3d 589, 593). "To overcome a presumption that commingled property is marital property, the party asserting that the property is separate must establish by clear and convincing evidence that the property originated solely as separate property and the joint account was created only as a matter of convenience, without the intention of creating a beneficial interest" (Renck v Renck, 131 AD3d at 1149).
Here, the plaintiff established through her own testimony, the defendant's testimony, and copies of checks from her uncle's estate, that during the marriage, she inherited the aggregate sum of $150,000 from her uncle. The plaintiff deposited the inheritance monies into one of the parties' joint accounts merely because she did not have any bank accounts titled solely in her name. The defendant admitted at the trial that, at his deposition, he testified that he intended to return the plaintiff's inheritance monies to her when the instant litigation settled, and that he intended to make things "right" with respect to the plaintiff's inheritance. Thus, contrary to the defendant's contentions, he recognized the separate character of the inheritance monies, such that the presumption that the commingled funds were marital was overcome (see Matter of Brandt v Peirce, 132 AD3d 665, 667; Chamberlain v Chamberlain, 24 AD3d at 593).
" A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed'" (Aloi v Simoni, 82 AD3d 683, 685, quoting Schwartz v Schwartz, 67 AD3d 989, 990; see Spencer-Forrest v Forrest, 159 AD3d 762; Scher v Scher, 91 AD3d 842, 846; Saleh v Saleh, 40 AD3d 617, 617-618; Oster v Goldberg, 226 AD2d 515). "Moreover, where the determination as to equitable distribution has been made after a nonjury trial, the trial court's assessment of the credibility of witnesses is afforded great weight on appeal" (Aloi v Simoni, 82 AD3d at 685; see Scher v Scher, 91 AD3d at 846; Schwartz v Schwartz, 67 AD3d at 990; Ivani v Ivani, 303 AD2d 639, 640). However, in reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and we may render a judgment we find warranted by the facts, bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499).
Contrary to the defendant's contentions, the Supreme Court providently exercised its discretion in valuing and distributing his interest in a business entity known as NAPA Management Service Corporation (hereinafter NMSC). "The trial court has broad discretion in selecting the dates for the valuation of marital assets and, depending on the particular circumstances of the case, may appropriately fix different valuation dates for different assets" (Pappas v Pappas, 140 AD3d 838, 840; see Culen v Culen, 157 AD3d at 930). Thus, "[c]ourts have discretion to value active' assets such as a professional practice on the commencement date, while passive' assets such as securities, which could change in value suddenly based on market fluctuations, may be valued at the date of trial" (Grunfeld v Grunfeld, 94 NY2d 696, 707; see Domestic Relations Law § 236[B][4][b]). Consequently, courts should use "the active/passive distinction as a helpful guidepost'" (Grunfeld v Grunfeld, 94 NY2d at 707), rather than as a rigid rule.
Under the circumstances of this case, the Supreme Court providently exercised its discretion in distributing one-half of the value of the defendant's interest in NMSC, as well as one-half of the value of the defendant's interest in a business entity known as AP Long Island Management, to the plaintiff as part of the equitable distribution of marital property (see Spencer-Forrest v Forrest, 159 AD3d 762).
Despite the defendant's contentions to the contrary, the Supreme Court's determination of the issue of equitable distribution of his enhanced earning capacity is also supported by the record. "Enhanced earnings from degrees and professional licenses attained during a marriage are subject to equitable distribution" (Haspel v Haspel, 78 AD3d 887, 890; see O'Brien v O'Brien, 66 NY2d 576). "Although the enhanced earnings from academic degrees and professional licenses attained during the marriage are subject to equitable distribution, it is incumbent upon the nontitled party seeking a distributive share of such assets to demonstrate a substantial contribution to the titled party's acquisition of that marital asset" (Badwal v Badwal, 126 AD3d 736, 737). The nontitled spouse also has the burden of proving the asset's value so as to afford the court a sufficient basis upon which to make a distributive award (see Vainchenker v Vainchenker, 242 AD2d 620, 621). The plaintiff established the actual value of the defendant's enhanced earning capacity through the testimony of her forensic expert. Moreover, the plaintiff demonstrated that she substantially contributed to the defendant's acquisition of his advanced degrees and certifications (see Shkreli v Shkreli, 142 AD3d 546, 548). Consequently, the court providently awarded the plaintiff an equitable [*2]share of 25% of the defendant's enhanced earning capacity (see Haspel v Haspel, 78 AD3d at 891; Vainchenker v Vainchenker, 242 AD2d at 621).
The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts (see Gafycz v Gafycz, 148 AD3d 679; Castello v Castello, 144 AD3d 723, 726). The court may order maintenance in such amount as justice requires, considering, among other factors, the standard of living of the parties during the marriage, the distribution of marital property, the duration of the marriage, the health and present and future earning capacity of the parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance (see Domestic Relations Law § 236[B][6][a]; D'Alauro v D'Alauro, 150 AD3d 675).
Taking these factors into consideration here, the Supreme Court, contrary to the parties' competing contentions, providently exercised its discretion in awarding the plaintiff maintenance in the sum of $5,000 per month for a period of five years (see Osman v Osman, 142 AD3d 978, 979; Sawin v Sawin, 128 AD3d 663, 663; Naik v Naik, 125 AD3d 734, 735; Kay v Kay, 302 AD2d 711).
Also contrary to the parties' competing contentions, the Supreme Court providently exercised its discretion in awarding the plaintiff counsel fees in the sum of $75,000 and expert fees in the sum of $15,000, after considering the relative financial circumstances of the parties together with all of the other circumstances of the case (see Domestic Relations Law § 237[a]; Babinski v Babinski, 152 AD3d 477, 478; Chesner v Chesner, 95 AD3d 1252, 1253).
MASTRO, J.P., BALKIN, HINDS-RADIX and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court