■ Karen Elizabeth Chamberlain, Appellant, v Mark Henry Chamberlain, Respondent. [808 NYS2d 352]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by her brief, from so much of (1) a judgment of the Supreme Court, Suffolk County (Bivona, J.), entered July 8, 2004, as, upon awarding her sole custody of the parties' two children, awarded the defendant sole decision-making authority as to the children's extracurricular activities, religious upbringing, and schooling, awarded the defendant visitation, directed both parties to attend coparenting counseling until completion is certified by a particular therapist, failed to direct the defendant to attend anger management counseling, limited the award of child support to the plaintiff by imputing income to her, denied her request for an award of maintenance, awarded the defendant 30 percent of her enhanced earning capacity, denied her request that the defendant pay one half of her student loans incurred during the parties' marriage, awarded the defendant a certain joint investment account as separate property, granted the defendant's application for an award of an attorney's fee, and denied her application for an award of an attorney's fee, and (2) an order of the same court dated October 18, 2004, as

granted, without a hearing, the defendant's motion to hold her in contempt of the provision of the judgment awarding the defendant sole decision-making authority as to the children's schooling, and for an award of an attorney's fee.

Ordered that the judgment is modified, on the law, the facts, and as a matter of discretion, by (1) deleting the provision thereof awarding the defendant sole decision-making authority with respect to the children's extracurricular activities, religious upbringing, and schooling and substituting therefor a provision prohibiting the plaintiff from scheduling any extracurricular activity for the children during the defendant's scheduled parenting time without his consent, (2) deleting the provision thereof providing that the defendant will have visitation three weekends per month and substituting therefor a provision providing that the defendant will have visitation two weekends per month, (3) deleting the provision thereof providing that the defendant will have visitation one night during the week prior to the weekend on which he does not have visitation and substituting therefor a provision providing that the defendant will have visitation on Tuesday and Thursday of each week from the conclusion of the children's school day until 8:00 P.M., (4) deleting the provision thereof awarding the defendant a distributive award in the amount of $34,950 and substituting therefor a provision awarding the defendant a distributive award in the amount of $24,969, and (5) deleting the provision thereof denying the plaintiff's request for maintenance; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements; and it is further,

Ordered that the matter is remitted to the Supreme Court, Suffolk County, for (1) a new determination with respect to the plaintiff's request for maintenance without considering as income to the plaintiff the income stream derived from her enhanced earning capacity, the value of which was distributed to the defendant, and (2) an evidentiary hearing on the defendant's motion to hold the plaintiff in contempt.

We have recognized that when joint custody is not possible because of the antagonistic relationship between the parties (*see Braiman v Braiman*, 44 NY2d 584, 591 [1978]; *Robinson v Robinson*, 111 AD2d 316, 318 [1985]), it may be appropriate, depending upon the particular circumstances of the case, to grant some custodial decision-making authority to the noncustodial parent (*see Matter of Ring v Ring*, 15 AD3d 406 [2005]; *Matter of Penninipede v Penninipede*, 6 AD3d 445, 446 [2004]).

The division of authority is usually made either somewhat evenly, in order to maintain the respective roles of each parent in the child's life (*see Matter of Ring v Ring, supra; Hugh L. v Fhara L.,* NYLJ, June 1, 2000, at 29, col 6 [Sup Ct, Bronx County, Drager, J.]) or, although unevenly, in a manner intended to take advantage of the strengths, demonstrated ability, or expressed interest of the noncustodial parent with respect to a particular dimension of child-rearing (*see Matter of Penninipede v Penninipede, supra* at 446; *Mars v Mars,* 286 AD2d 201, 202-203 [2001]; *Matter of Frize v Frize,* 266 AD2d 753, 757 [1999]; *Arenson v Arenson,* 2003 NY Slip Op 50573 [U] [Sup Ct, Onondaga County, Feb. 13, 2003]; *F. v F.,* NYLJ, Oct. 19, 2001, at 21, col 5, [Sup Ct, Kings County, Panepinto, J.]). Here, the only predicate for granting decision-making authority with respect to most of the significant issues in child-rearing—the children's extracurricular activities, religious upbringing and schooling—to the defendant, the noncustodial parent, was the finding that the plaintiff had interfered with the defendant's parental role by scheduling the children's extracurricular activities during his parenting time. While this finding is supported by the record and justified removing from the plaintiff the decision-making authority that she had abused (*see Trinh Quoc Tran v Tau Minh Tran,* 277 AD2d 49, 49-50 [2000]), it was not a basis for depriving the plaintiff of all decision-making authority normally incident to the role of sole custodial parent (*see Crane v Crane,* 264 AD2d 749, 750-751 [1999]; *Matter of Davis v Davis,* 240 AD2d 928, 930 [1997]). Since the Supreme Court's concern could have been addressed by prohibiting the plaintiff from scheduling certain activities during the defendant's parenting time without his consent, the Supreme Court's grant of decision-making authority to the defendant was an improvident exercise of its discretion.

The Supreme Court also improvidently exercised its discretion in providing that the defendant have visitation three weekends each month plus one night during the week preceding the weekend on which he did not have visitation. The extent to which the noncustodial parent may exercise parenting time is a matter committed to the sound discretion of the hearing court, to be determined on the basis of the best interests of the child (*see Matter of Kachelhofer v Wasiak,* 10 AD3d 366 [2004]; *Matter of Levande v Levande,* 308 AD2d 450, 451 [2003]; *Matter of Morash v Minucci,* 299 AD2d 486, 487 [2002]), consistent with the concurrent right of the child and the noncustodial parent (*see Weiss v Weiss,* 52 NY2d 170, 175 [1981]; *Matter of Ritz v Otero,* 265 AD2d 560 [1999]; *Matter of Rodriguez v Gasparino,* 218 AD2d 739, 740 [1995]) to meaningful time together (*see*

*Matter of Grossman v Grossman,* 5 AD3d 486, 487 [2004]; *Matter of Mackey v Mackey,* 265 AD2d 329 [1999]; *Matter of Bradley v Wright,* 260 AD2d 477 [1999]). A visitation schedule that deprives the custodial parent of "any significant quality time" with the child is, however, excessive (*Palumbo v Palumbo,* 292 AD2d 358, 360 [2002]; *Cesario v Cesario,* 168 AD2d 911 [1990]). Here, the schedule established by the Supreme Court had that effect. In the circumstances presented, a more appropriate schedule, consistent with the parental rights and responsibilities of both parties, provides for the noncustodial defendant to have visitation two weekends each month and two evenings per week.

The Supreme Court correctly concluded that the parties' investment account, funded with the proceeds of an action commenced by the defendant to recover damages for personal injuries he sustained prior to the marriage, is his separate property, even though he placed those funds in an investment account titled jointly with the plaintiff. The proceeds of an action to recover damages for personal injuries are the separate property of the injured spouse (*see* Domestic Relations Law § 236 [B] [1] [d] [2]; *Gundlach v Gundlach,* 223 AD2d 942 [1996]). When spouses hold property in a joint account, however, a rebuttable presumption arises that both have an undivided one-half interest in it (*see* Banking Law § 675 [b]; *Tayar v Tayar,* 208 AD2d 609, 610 [1994]). Thus, by depositing the proceeds of his personal injury lawsuit in an account titled jointly with the plaintiff, the defendant created the presumption that the funds are marital (*see Lagnena v Lagnena,* 215 AD2d 445, 446 [1995]; *Di Nardo v Di Nardo,* 144 AD2d 906). This presumption may be overcome, however, by evidence that the account was titled jointly as a matter of convenience, without the intention of creating a beneficial interest, and that the funds in the account originated solely in the separate property of the spouse who claims the separate interest (*see Wade v Steinfeld,* 15 AD3d 390, 391 [2005]; *Lagnena, supra*; *Giuffre v Giuffre,* 204 AD2d 684, 685 [1994]; *Filippi v Filippi,* 53 AD2d 658, 659 [1976]; *Phillips v Phillips,* 70 AD2d 30, 38 [1979]). Here, the defendant overcame the presumption by establishing that he was the sole beneficiary of the proceeds of the personal injury action, that the investment account into which the funds were deposited, although in joint names, was managed solely by him, and that the plaintiff had no involvement with the account other than one withdrawal which she made at the defendant's direction (*see Garner v Garner,* 307 AD2d 510 [2003]).

The Supreme Court providently exercised its discretion in

awarding the defendant 30 percent of the value of the degrees and license constituting the enhanced earning capacity achieved by the plaintiff during the marriage, based upon his indirect contributions to the attainment of that enhanced earning capacity by paying all of the family's living expenses while the plaintiff was a student and modifying his employment schedule in order to enable him to care for the parties' older child, who was born during that period (*see McSparron v McSparron,* 87 NY2d 275, 280 [1995]; *Miklos v Miklos,* 9 AD3d 397, 398 [2004]; *Morrongiello v Paulsen,* 195 AD2d 594, 596 [1993]; *Barbuto v Barbuto,* 286 AD2d 741, 742-743 [2001]). Since that enhanced earning capacity is marital property, however, the Supreme Court should have required the defendant to bear a concomitant portion of the student loan debt incurred by the plaintiff in pursuing her degrees (*see Cook v Cook,* 237 AD2d 891, 892 [1997]; *MacDonald v MacDonald,* 226 AD2d 596, 597 [1996]). The defendant's share of that debt should have been set off against the defendant's distributive award, reducing it to $24,969.

The record supports the Supreme Court's determination to impute an annual income of $60,000 to the plaintiff. Maintenance and child support are determined on the basis of earning capacity, not actual earnings (*see Pezza v Pezza,* 300 AD2d 555 [2002]; *Borra v Borra,* 218 AD2d 780 [1995]; *Brodsky v Brodsky,* 214 AD2d 599, 600 [1995]). Here, the report of the financial expert that the plaintiff could expect to earn such an annual income and the plaintiff's part-time earnings commensurate with such full-time compensation support the Supreme Court's determination (*see Viscardi v Viscardi,* 303 AD2d 401 [2003]; *Cerabona v Cerabona,* 302 AD2d 346, 347 [2003]; *Walker v Walker,* 289 AD2d 225, 226 [2001]; *Brown v Brown,* 239 AD2d 535 [1997]).

In denying the plaintiff's request for maintenance, however, the Supreme Court failed to remove from consideration that portion of the plaintiff's income stream that was distributed in equitable distribution, as it was required to do (*see Grunfeld v Grunfeld,* 94 NY2d 696, 704 [2000]; *McSparron v McSparron, supra; Miklos v Miklos, supra* at 398; *Hlinka v Hlinka,* 1 AD3d 561, 562 [2003]). Since we cannot on this record determine the appropriate method for separating that which was distributed from that which was not, we remit the matter to the Supreme Court, Suffolk County, for reconsideration of the plaintiff's request for maintenance without consideration of the income stream derived from the enhanced earning capacity (*see Miklos v Miklos, supra,* 9 AD3d at 399). We note in doing so, however,

that the plaintiff's argument that such income stream should similarly have been disregarded in determining the defendant's child support obligation is without merit (*see Holterman v Holterman,* 3 NY3d 1, 13-14 [2004]).

A party who has engaged in conduct resulting in unnecessary litigation may properly be denied an award of an attorney's fee (*see Gottlieb v Gottlieb,* 297 AD2d 620 [2002]; *Ravel v Ravel,* 235 AD2d 410, 411 [1997]; *Meyn v Meyn,* 119 AD2d 645 [1986]), and a party who was thereby caused to incur legal fees that otherwise would have been unnecessary may recover such fees (*see Clark v Clark,* 17 AD3d 503 [2005]; *McCully v McCully,* 306 AD2d 329, 330 [2003]; *Saslow v Saslow,* 305 AD2d 487, 489 [2003]; *Ferina v Ferina,* 286 AD2d 472, 475 [2001]; *Morrissey v Morrissey,* 259 AD2d 472, 473 [1999]; *Walker v Walker,* 255 AD2d 375, 376 [1998]). The record supports the Supreme Court's determination to deny the plaintiff's request for an award of an attorney's fee and grant the defendant's request for an award of an attorney's fee on this basis.

The plaintiff's contention that the trial court erred in adjudicating her in contempt of the divorce judgment without first holding an evidentiary hearing is not academic. "[I]nasmuch as enduring consequences potentially flow from [the] order adjudicating [the contemnor] in civil contempt" (*Matter of Hold v Hold,* 8 AD3d 279 [2004], quoting *Matter of Bickwid v Deutsch,* 87 NY2d 862 [1995]), an appeal from a contempt adjudication is not rendered academic when the contempt is purged (*see Matter of Zullo v Hom,* 10 AD3d 614, 616 [2004]). Since the record with respect to the contempt motion raises an issue of fact as to whether the defendant had prior knowledge that the plaintiff had enrolled the parties' son in parochial school, an evidentiary hearing was required (*see People ex rel. Smulczeski v Smulczeski,* 18 AD3d 785 [2005]; *Matter of Janczuk v Janczuk,* 305 AD2d 680, 681 [2003]; *Lesesne v Lesesne,* 292 AD2d 510 [2002]; *Sidhu v Sidhu,* 274 AD2d 465 [2000]; *Mulder v Mulder,* 191 AD2d 541 [1993]).

The plaintiff's remaining contentions are without merit. Florio, J.P., Krausman, Luciano and Spolzino, JJ., concur.