Spinner v Spinner (2020 NY Slip Op 06307)





Spinner v Spinner


2020 NY Slip Op 06307


Decided on November 4, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 4, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
LEONARD B. AUSTIN
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2017-08790
 (Index No. 9613/12)

[*1]Warren D. Spinner, appellant,
v
Carol R. Spinner, respondent.


Moran & Brodrick, Garden City, NY (Robert H. Brodrick of counsel), for appellant.
Robert E. Hornberger, Esq., P.C., Melville, NY, for respondent.



DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals, by permission, from an order of the Supreme Court, Suffolk County (Carol Mackenzie, J.), dated July 27, 2017. The order, insofar as appealed from, after a nonjury trial, determined the equitable distribution of the plaintiff's enhanced earning capacity, directed the plaintiff to pay child support in the sum of $1,769.23 per week, directed the plaintiff to pay 92% of the costs of extracurricular activities of the parties' children, up to a maximum of $15,000 per year, and directed the plaintiff to pay 92% of the college expenses of the parties' children.
ORDERED that the order is modified, on the law and the facts, (1) by deleting the provision thereof awarding the defendant a distributive award of $1,351,500 payable in five annual installments commencing on October 1, 2017, and payable each October 1st thereafter, with statutory interest to apply after October 1, 2017, and substituting therefor a provision awarding the defendant a distributive award of $1,293,622.50, which the plaintiff may pay in equal annual installments over a period of 10 years, together with interest at the statutory rate of 9% per annum on each year's unpaid balance, with the first payment due on January 1, 2021, with interest from the date of the order appealed from, and all subsequent payments due on January 1st each year thereafter, and directing that, in the event the plaintiff fails to make timely payment when each annual installment is due, a money judgment may be entered for the entire unpaid portion of the distributive award, inclusive of interest earned from the date of the order appealed from until that time, (2) by deleting the provisions thereof limiting the combined parental income to $400,000 and directing the plaintiff to pay child support in the sum of $1,769.23 per week, and substituting therefor provisions limiting the combined parental income to $250,000 and directing the plaintiff to pay child support in the sum of $1,105.77 per week, and (3) by deleting the provision thereof directing the plaintiff to pay 92% and the defendant to pay 8% of the college expenses of the parties' children, and substituting therefor a provision directing the plaintiff to pay 92% and the defendant to pay 8% of the college expenses of the parties' older child after the funds in that child's 529 College Savings Account are exhausted with a credit against, or a reduction of, the plaintiff's child support obligation if that child resides away from home while attending college for any amounts that the plaintiff contributes toward college room and board expenses for that child during those months; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
The parties were married in 1998, and have two children in common. During the course of the marriage, the plaintiff attended and graduated from medical school, completed a five-year residency in internal medicine and neurology, and completed a clinical fellowship in neurophysiology. The plaintiff commenced this action in April 2012. After a nonjury trial, in an order dated July 27, 2017, the Supreme Court, inter alia, awarded the defendant a distributive share of the plaintiff's enhanced earning capacity and directed the plaintiff to pay (1) child support in the sum of $1,769.23 per week, (2) 92% of the cost of the children's extracurricular activities up to $15,000 per year, and (3) 92% of the children's college expenses. The plaintiff appeals.
"Once property is classified as marital or separate, the trial court has broad discretion to select an 'appropriate date for measuring the value of [the] property'" (Mesholam v Mesholam, 11 NY3d 24, 28, quoting McSparron v McSparron, 87 NY2d 275, 287; see Giallo-Uvino v Uvino, 165 AD3d 894, 895). "A medical license is an active asset and should generally be valued as of the commencement date of the action, since any appreciation in value after that date is the product of the labors of the licensed spouse" (Lipsky v Lipsky, 276 AD2d 753, 754). Here, the plaintiff's medical license and medical training enhanced his earning capacity. Although the plaintiff commenced the action in April 2012, there is no evidence that his income changed at any time between the commencement of the action and the end of 2012. Accordingly, the Supreme Court providently exercised its discretion in determining the value of the plaintiff's enhanced earning capacity based on his 2012 earnings (see Lipsky v Lipsky, 276 AD2d at 754; see also Levy v Levy, 39 AD3d 487, 488; cf Judge v Judge, 48 AD3d 424, 425).
We agree with the Supreme Court's determination that the defendant was entitled to a 25% share of the plaintiff's enhanced earning capacity from his medical education and training, which he obtained during the course of the marriage (see O'Brien v O'Brien, 66 NY2d 576, 585-588; cf. Elsayed v Edrees, 141 AD3d 503, 505). The plaintiff's student loans were paid with marital funds, and the defendant made substantial contributions by, inter alia, supporting his educational endeavors, working from the time of the marriage in June 1998 until she started law school in September 2001 and again from September 2008 until May 2011, contributing her earnings to the family, being the primary caregiver of the parties' two children, cooking family meals, and participating in housekeeping responsibilities (see Kim v Schiller, 112 AD3d 671, 673-674; Huffman v Huffman, 84 AD3d 875, 877; Jayaram v Jayaram, 62 AD3d 951, 953). Contrary to the plaintiff's contention, the fact that the parties employed a nanny for a period of time to assist with housekeeping and childcare responsibilities does not require a reduction in the defendant's distributive share of his enhanced earning capacity (see e.g. Ning-Yen Yao v Kao-Yao, 147 AD3d 624, 630-631).
According to the plaintiff's statement of net worth, sworn to on May 15, 2017, he incurred $231,510 in student loan debt pursuing his medical degree. As the plaintiff's enhanced earning capacity is marital property, the Supreme Court should have required the defendant "to bear a concomitant portion of the student loan debt incurred" by the plaintiff in pursuing his degree (Chamberlain v Chamberlain, 24 AD3d 589, 594; see Cook v Cook, 237 AD2d 891, 892). Accordingly, the defendant's 25% share of that debt should have been set off against her distributive award of the plaintiff's enhanced earning capacity (see Chamberlain v Chamberlain, 24 AD3d at 594).
The Supreme Court improvidently exercised its discretion in directing the plaintiff to pay the defendant her distributive award in annual installments over a period of 5 years. In consideration of the nonliquid nature of the plaintiff's assets and the substantial amount of the award, the court should have permitted the plaintiff to pay the award in installments over a period of 10 years (see Iarocci v Iarocci, 98 AD3d 999, 1000), together with interest at the statutory rate of 9% per annum from the date of the order appealed from (see CPLR 5004). Contrary to the plaintiff's contention, the court providently exercised its discretion in imposing interest at the statutory rate on the defendant's distributive award (see Iarocci v Iarocci, 98 AD3d at 1000; Cooper v Cooper, 84 AD3d 854, 858).
When calculating the plaintiff's child support obligation, the Supreme Court [*2]improvidently exercised its discretion in capping the combined parental income in excess of $143,000 at $400,000. The Child Support Standards Act "sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling" (Matter of Freeman v Freeman, 71 AD3d 1143, 1144; see Domestic Relations Law § 240[1-b][c]; Holterman v Holterman, 3 NY3d 1, 11; Candea v Candea, 173 AD3d 663, 664). "Where the combined parental income exceeds that ceiling, the court, in fixing the basic child support obligation on income over the ceiling, has the discretion to apply the factors set forth in Domestic Relations Law § 240(1-b)(f), or to apply the statutory percentages, or to apply both" (Candea v Candea, 173 AD3d at 664; see Domestic Relations Law § 240[1-b][c][3]). "The court must articulate an explanation of the basis for its calculation of child support based on parental income in excess of the statutory cap" (Candea v Candea, 173 AD3d at 665; see Matter of Cassano v Cassano, 85 NY2d 649, 655).
Here, although the Supreme Court set forth the factors it considered in determining the child support percentage of 25% of the parties' combined income in excess of $143,000, the court did not offer any reasons as to why it was appropriate to award child support based on combined parental income up to $400,000. Although the plaintiff was a high-wage earner, the record demonstrates that the children lived a middle-class lifestyle. The children attended public school and, over the years, attended day camp during the summer. While the parties employed a live-in nanny for several years to assist with childcare, there is no indication that the children lived a lavish lifestyle. Accordingly, the court should have limited the combined parental income in excess of the statutory cap to $250,000 (see Matter of Spano v Spano, 168 AD3d 857, 860; cf. Matter of Keith v Lawrence, 113 AD3d 615, 616; Ciampa v Ciampa, 47 AD3d 745, 747).
In addition to the plaintiff's basic chid support obligation, the Supreme Court directed the plaintiff to pay 92% of the costs of the children's extracurricular activities, including summer camp, up to a maximum of $15,000 per year. These expenses may be appropriately considered as an "add on expense" for child care (see Micciche v Micciche, 62 AD3d 673, 673; Matter of Maiolica v Maiolica, 30 AD3d 603; Sieratzki v Sieratzki, 8 AD3d 552, 554). Here, under the circumstances, the court providently exercised its discretion in directing the plaintiff to pay 92% of the costs of the children's extracurricular activities in addition to his basic child support obligation (see Matter of Maiolica v Maiolica, 30 AD3d at 603; Sieratzki v Sieratzki, 8 AD3d at 554).
The Supreme Court also directed the plaintiff to contribute to the college expenses of the parties' children. "The court may direct a parent to contribute to a child's college education pursuant to Domestic Relations Law § 240(1-b)(c)(7)" (Bogannam v Bogannam, 60 AD3d 985, 986; see Repetti v Repetti, 147 AD3d 1094, 1097). "However, when college is several years away, and no evidence is presented as to the child's academic interests, ability, possible choice of college, or what his or her expenses might be, a directive compelling [a parent] to pay for those expenses is premature and not supported by the evidence" (Bogannam v Bogannam, 60 AD3d at 986; see Repetti v Repetti, 147 AD3d at 1097; Felix v Felix, 87 AD3d 1106, 1108). At the time of trial, the parties' younger child was 14 years old, and no evidence was presented concerning her academic ability, interest in attending college, choice of college, or the expenses attendant with college. Accordingly, it was premature for the court to direct the plaintiff to contribute to the college expenses of the parties' younger child (see Repetti v Repetti, 147 AD3d at 1097; Felix v Felix, 87 AD3d at 1108).
The Supreme Court providently exercised its decision in directing the plaintiff to pay 92% of the college expenses of the parties' older child (see Morille-Hinds v Hinds, 169 AD3d 896, 900; Matter of Lynn v Kroenung, 97 AD3d 822, 823). However, the child support award should have included a provision either directing that, when that child is living away from home while attending college, the plaintiff's monthly child support obligation shall be reduced, or awarding the plaintiff a credit against his child support obligation for any amounts that he contributes toward college room and board expenses for that child during those months (see Dougherty v Dougherty, 131 AD3d 916, 920; Sawin v Sawin, 128 AD3d 663, 665). Accordingly, the court should determine the plaintiff's child support obligation, considering any time periods that the child is living away from home at college (see Dougherty v Dougherty, 131 AD3d at 920; Sawin v Sawin, 128 AD3d at 665).
The Supreme Court did not impose a SUNY cap on the plaintiff's obligation to contribute to the parties' older child's college expenses. "The court may direct a parent to contribute to a child's private college education, even in the absence of special circumstances or a voluntary agreement of the parties, as long as the court's discretion is not improvidently exercised" (Matter of Manfrede v Harris, 162 AD3d 1035, 1035; see Domestic Relations Law § 240[1-b][c][7]). "In determining whether to include such educational expenses as part of the parent's child support obligation, the court must consider the circumstances of the case, including the circumstances of the respective parties, the best interests of the child, and the requirements of justice" (Matter of Manfrede v Harris, 162 AD3d at 1035). "Whether to impose a SUNY cap is determined on a case-by-case basis, considering the parties' means and the child's educational needs" (Tishman v Bogatin, 94 AD3d 621, 622; see Walker v Walker, 130 AD3d 805, 806).
Here, in declining, sub silento, to impose a SUNY cap on the plaintiff's contribution to the college expenses of the parties' older child, the Supreme Court did not improvidently exercise its discretion (see Walker v Walker, 130 AD3d at 806). The defendant testified during the trial that only one SUNY school offered the program in which the older child expressed an interest but did not accept her for matriculation until after she committed to, and paid the applicable fees for, her private college, which offered such program. Further, the plaintiff acquiesced in the older child's acceptance of the private college admission by accompanying her to the college to pay her deposit for room and board. The plaintiff offered no evidence to the contrary.
Finally, under the circumstances, the Supreme Court improvidently exercised its discretion in failing to direct that the parties exhaust the funds in their older child's 529 College Savings Account before the parties are obligated to contribute to her college expenses.
BALKIN, J.P., AUSTIN, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court