Bari v Bari (2021 NY Slip Op 06980)





Bari v Bari


2021 NY Slip Op 06980


Decided on December 15, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LINDA CHRISTOPHER
PAUL WOOTEN
JOSEPH A. ZAYAS, JJ.


2018-10550 
2018-12352
 (Index No. 201153/14)

[*1]Adam Bari, appellant-respondent,
v
Deena Bari, respondent-appellant.


Jeffrey S. Schecter & Associates, P.C., Garden City, NY (Bryce R. Levine of counsel), for appellant-respondent.
Geffner Kersch P.C., Garden City, NY (Alisa F. Geffner of counsel), for respondent-appellant.



DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals, and the defendant cross-appeals, from (1) a decision and order (one paper) of the Supreme Court, Nassau County (Joseph H. Lorintz, J.), dated June 22, 2018, made after a nonjury trial, and (2) a judgment of divorce of the same court entered August 3, 2018. The decision and order, inter alia, denied the defendant's motion for an award of attorneys' fees and denied that branch of the plaintiff's motion which was for a downward modification of his pendente lite support obligations. The judgment of divorce, insofar as appealed from, upon the decision and order, (1) directed the plaintiff to pay the defendant maintenance for a period of eight years in the sums of $9,000 per month for four years, $7,500 per month for the following two years, and $5,000 per month for the remaining two years, (2) directed the plaintiff to pay for 100% of the debt on his American Express credit card and HSBC line of credit, (3) declined to award the plaintiff a credit for payments he made toward the defendant's Bloomingdale's credit card and landscaper fees, (4) declined to award the plaintiff a credit for payments he made toward the mortgage and real estate taxes on the marital residence, (5) directed the plaintiff to pay the sums of $5,075 per month in basic child support until the emancipation of the parties' oldest child, $4,375 per month in basic child support thereafter until the emancipation of the parties' middle child, and $2,975 per month in basic child support thereafter until the emancipation of the parties' youngest child, (6) directed the plaintiff to pay 75% of the children's unreimbursed medical expenses, and (7) awarded the defendant pendente lite arrears in the sum of $49,500. The judgment of divorce, insofar as cross-appealed from, upon the decision and order, (1) declined to award the defendant attorneys' fees, (2) declined to direct the plaintiff to pay for the "gap year" programs for the parties' children, and (3) declined to award the defendant additional pendente lite arrears.
ORDERED that the appeal and the cross appeal from the decision and order are dismissed, without costs or disbursements; and it is further,
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by adding a provision thereto awarding the plaintiff a credit in the sum of $26,240.21 for payments he made toward the principal reduction of the mortgage on the [*2]marital residence, and (2) by deleting the provision thereof directing the plaintiff to pay 75% of the children's unreimbursed medical expenses, and substituting therefor a provision directing the plaintiff to pay 75% of the children's unreimbursed medical expenses for in-network providers, or to pay 75% of unreimbursed medical expenses for out-of-network providers only if the provider has an established relationship with the child, the plaintiff has approved the provider in writing, or there are no available in-network providers; as so modified, the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The appeal and the cross appeal from the decision and order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment of divorce in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal and the cross appeal from the decision and order are brought up for review and have been considered on the appeal and the cross appeal from the judgment of divorce (see CPLR 5501[a][1]).
The parties were married on June 12, 1997, and have three children together. In April 2014, the plaintiff commenced this action for a divorce and ancillary relief. In March 2018, the Supreme Court conducted a nonjury trial on issues, inter alia, of maintenance and child support. In a decision and order dated June 22, 2018, the court, among other things, made determinations as to maintenance and child support. On August 3, 2018, the court entered a judgment of divorce. The plaintiff appeals and the defendant cross-appeals.
"The amount and duration of spousal maintenance is an issue generally committed to the sound discretion of the trial court and each case is to be resolved upon its own unique facts and circumstances" (Fishman v Fishman, 186 AD3d 1199, 1200). "In cases such as this one, commenced prior to January 23, 2016 (see L 2015, ch 269, § 4), factors to be considered are, among others, the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to become self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (Strohli v Strohli, 174 AD3d 938, 942-943). Here, considering the relevant factors, including the present and future earning capacities of the parties, the reduced earning capacity of the defendant as a result of having foregone career opportunities during the marriage, and the defendant's ability and time needed to become self-supporting, the Supreme Court's maintenance award was a provident exercise of discretion (see Fishman v Fishman, 186 AD3d at 1200; Ruane v Ruane, 55 AD3d 586).
We also decline to disturb the Supreme Court's determination directing the plaintiff to pay basic child support in the sums of $5,075 per month until the emancipation of the parties' oldest child, $4,375 per month thereafter until the emancipation of the parties' middle child, and $2,975 per month thereafter until the emancipation of the parties' youngest child. "The Child Support Standards Act 'sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling'" (Spinner v Spinner, 188 AD3d 748, 751, quoting Matter of Freeman v Freeman, 71 AD3d 1143, 1144; see Domestic Relations Law § 240[1-b][c]; Holterman v Holterman, 3 NY3d 1, 11). "'Where the combined parental income exceeds that ceiling, the court, in fixing the basic child support obligation on income over the ceiling, has the discretion to apply the factors set forth in Domestic Relations Law § 240(1-b)(f), or to apply the statutory percentages, or to apply both'" (Spinner v Spinner, 188 AD3d at 751, quoting Candea v Candea, 173 AD3d 663, 664; see Domestic Relations Law § 240[1-b][c][3]). "'The court must articulate an explanation of the basis for its calculation of child support based on parental income in excess of the statutory cap'" (Spinner v Spinner, 188 AD3d at 751, quoting Candea v Candea, 173 AD3d at 665; see Matter of Cassano v Cassano, 85 NY2d 649, 655). Here, the court sufficiently articulated the reasons for its determination to calculate child support based on combined parental income in excess of the statutory cap of $148,000, including its consideration of the financial resources of the parties and the standard of living enjoyed by the children during the marriage (see Matter of Hipp v Ryan, 188 AD3d 1206, 1207-1208; Matter of Parsick v Rubio, 103 AD3d 898, 901). Further, contrary to the plaintiff's contention, the court did not improvidently exercise its discretion in declining to impute [*3]income to the defendant in excess of her most recent reported annual income (see Levi v Levi, 186 AD3d 1628, 1629).
Contrary to the plaintiff's contention, the Supreme Court providently exercised its discretion in directing that he was responsible for 100% of the debt on his American Express credit card and HSBC line of credit, and that he was not entitled to a credit for payments he made toward the defendant's Bloomingdale's credit card and landscaper fees. While "[e]xpenses incurred after the commencement of an action for a divorce are, in general, the responsibility of the party who incurred the debt," "[e]xpenses incurred prior to the commencement of an action for a divorce are marital debt to be equally shared by the parties upon an offer of proof that they represent marital expenses" (Epstein v Messner, 73 AD3d 843, 845). "However, the court has broad discretion in allocating the assets and debts of the parties to a matrimonial action, and 'liability for the payment of marital debts need not be equally apportioned but may be distributed in accordance with the [equitable distribution] factors set forth in Domestic Relations Law § 236(B)(5)(d)'" (Minervini v Minervini, 152 AD3d 666, 668 [citations omitted], quoting Lewis v Lewis, 6 AD3d 837, 839-840). Here, the evidence demonstrated that the earning capacity of the plaintiff, who had paid for all of the parties' expenses during the marriage, was far greater than the earning capacity of the defendant. Since the payments made by the plaintiff toward the credit cards and line of credit, as well as the landscaper fees, were relatively minimal in relation to the plaintiff's annual income, the court did not improvidently exercise its discretion in directing that the plaintiff was 100% responsible for the debt on the American Express credit card and HSBC line of credit, and in declining to award the plaintiff a credit for payments toward the Bloomingdale's credit card and landscaper fees (see Lewis v Lewis, 6 AD3d at 840).
However, the Supreme Court improvidently exercised its discretion in declining to award the plaintiff a credit against the proceeds of the sale of the marital residence for payments he made to reduce the principal balance of the mortgage on the marital residence during the pendency of this action (see Hymowitz v Hymowitz, 119 AD3d 736; Kilkenny v Kilkenny, 54 AD3d 816). "Where . . . a party has paid the other party's share of what proves to be marital debt, such as the mortgage, . . . reimbursement is required" (Le v Le, 82 AD3d 845, 846). Based upon the plaintiff's payments toward the mortgage on the marital residence during the pendency of this action, which reduced the marital debt of the parties, we determine that the plaintiff is entitled to a credit in the sum of $26,240.21. Under the particular circumstances of this case, including the court's determination in a pendente lite order not to award the defendant the presumptive amount of temporary maintenance in light of the plaintiff's obligation to pay, among other things, the real estate taxes on the marital residence, we determine that the plaintiff is not entitled to a credit for payments he made toward the real estate taxes.
Furthermore, the plaintiff challenges the Supreme Court's directive that he pay for 75% of the children's unreimbursed medical expenses, including for out-of-network providers. Pursuant to the parties' custody and parenting time agreement, which was incorporated by reference into the judgment of divorce, the defendant had "final say" in the event the parties were unable to reach an agreement on any matter concerning, inter alia, the health of the children. Under the particular circumstances of this case, we deem it appropriate to direct that the plaintiff pay for 75% of the children's unreimbursed medical expenses for in-network providers, or for 75% of unreimbursed medical expenses for out-of-network providers only if (1) the provider has an established relationship with the child, (2) the plaintiff has approved the provider in writing, or (3) there are no available in-network providers (see Hills v Hills, 240 AD2d 706, 707).
The parties' remaining contentions are without merit.
DILLON, J.P., CHRISTOPHER, WOOTEN and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court