Tuchman v Tuchman (2022 NY Slip Op 00454)





Tuchman v Tuchman


2022 NY Slip Op 00454


Decided on January 26, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 26, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
FRANCESCA E. CONNOLLY
SYLVIA O. HINDS-RADIX
ROBERT J. MILLER, JJ.


2018-12993 
2018-12994
2019-04027
 (Index No. 5016/12)

[*1]Brenda Tuchman, respondent-appellant,
v
Nelson M. Tuchman, appellant-respondent.


Herrick, Feinstein LLP, New York, NY (Avery Mehlman of counsel), for appellant-respondent.
Law Offices of Daniel B. Nottes, PLLC, New York, NY, for respondent-appellant.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from (1) an order of the Supreme Court, Westchester County (Gretchen Walsh, J.), dated August 31, 2018, (2) a judgment of divorce of the same court, also dated August 31, 2018, and (3) a money judgment of the same court, dated February 28, 2019, and the plaintiff cross-appeals from the order and the judgment of divorce. The order dated August 31, 2018, insofar as appealed from, granted that branch of the plaintiff's motion which was to direct the defendant to reimburse her the sum of $110,000, representing money allegedly due to her pursuant to the parties' stipulation of settlement dated June 19, 2017, and denied the defendant's motion pursuant to CPLR 4404(b) to set aside stated portions of a decision dated April 5, 2018, made after a nonjury trial. The order dated August 31, 2018, insofar as cross-appealed from, denied those branches of the plaintiff's motion which were for an award of $7,542.41 in alleged pendente lite maintenance and child support arrears, and an award of attorney's fees for enforcement of the parties' stipulation of settlement dated June 19, 2017. The judgment of divorce, insofar as appealed from, (1) awarded the plaintiff nondurational maintenance in the amount of $25,000 per month commencing May 1, 2018, and continuing for a period of five years, the amount of $20,000 per month for an additional period of five years, and the amount of $12,000 per month thereafter until the death of either party or the remarriage of the plaintiff; (2) directed the defendant to pay basic child support for the parties' youngest child in the sum of $4,611 per month and 93% of the costs of the extracurricular activities of that child; and (3) directed the defendant to pay 100% of the unreimbursed healthcare costs of the parties' two youngest children. The judgment of divorce, insofar as cross-appealed from, (1) awarded the plaintiff nondurational maintenance in the amount of only $25,000 per month for a period of five years, the amount of only $20,000 for an additional five years, and the amount of only $12,000 per month thereafter until the death of either party or the remarriage of the plaintiff; (2) directed the defendant to pay basic child support for the parties' youngest child in the sum of only $4,611 per month and only 93% of the costs of the extracurricular activities of that child; and (3) directed the plaintiff to reimburse the defendant the amount of $7,500 toward the total costs of the trial transcripts. The money judgment dated February 28, 2019, is in favor of the plaintiff and against the defendant in the principal sum of $110,000.
ORDERED that the appeal and the cross appeal from the order dated August 31, 2018, are dismissed, without costs or disbursements; and it is further,
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof directing the defendant to pay basic child support for the parties' youngest child in the sum of $4,611 per month, and substituting therefor a provision directing the defendant to pay basic child support for the parties' youngest child in the sum of $4,958.33 per month, and (2) by deleting the provision thereof directing the defendant to pay 93% of the costs of the extracurricular activities, including summer camp, of the parties' youngest child; as so modified, the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements; and it is further,
ORDERED that the money judgment is affirmed, without costs or disbursements.
The appeal and cross appeal from the order dated August 31, 2018, must be dismissed because the right of direct appeal and cross appeal therefrom terminated with the entry of the judgment of divorce (see Matter of Aho, 39 NY2d 241).
The plaintiff and the defendant were married in January 1985 and have four children, two of whom were unemancipated at the time of trial, born 1997 and 2005, respectively. On November 27, 2012, the plaintiff commenced this action for a divorce and ancillary relief.
Midway through a nonjury trial, on June 19, 2017, the parties entered into a stipulation of settlement resolving the issues of equitable distribution, separate property, businesses, counsel fees, and professional fees (hereinafter the June 2017 stipulation). Following the trial, the Supreme Court issued a decision dated April 5, 2018, setting forth its determinations regarding the outstanding issues. In the April 5, 2018 decision, the court determined to impute an annual income of $800,000 to the defendant and an annual income of $62,231.46 to the plaintiff.
After the parties entered into the June 2017 stipulation but prior to the Supreme Court's issuance of the April 5, 2018 decision, the plaintiff moved, inter alia, to direct the defendant to reimburse her the sum of $110,000, representing money allegedly due to her pursuant to the June 2017 stipulation, for an award of $7,542.41 in alleged pendente lite maintenance and child support arrears, and an award of attorney's fees for enforcement of the June 2017 stipulation. After the court issued the April 5, 2018 decision, the defendant moved pursuant to CPLR 4404(b) to set aside those portions of the decision regarding maintenance and child support. In an order dated August 31, 2018, the court, inter alia, granted that branch of the plaintiff's motion which was to direct the defendant to reimburse her the sum of $110,000, and otherwise denied the plaintiff's motion. The court also denied the defendant's motion.
The Supreme Court subsequently entered a judgment of divorce, also dated August 31, 2018, which incorporated the June 2017 stipulation. The defendant appeals from so much of the judgment of divorce as (1) awarded the plaintiff nondurational maintenance in the amount of $25,000 per month commencing May 1, 2018, and continuing for a period of five years, the amount of $20,000 per month for an additional period of five years, and the amount of $12,000 per month thereafter until the death of either party or the remarriage of the plaintiff; (2) directed the defendant to pay basic child support for the parties' youngest child in the sum of $4,611 per month and 93% of the costs of the extracurricular activities of that child; and (3) directed the defendant to pay 100% of the unreimbursed healthcare costs of the parties' two youngest children. The plaintiff cross-appeals from so much of the judgment of divorce as (1) awarded her nondurational maintenance in the amount of only $25,000 per month for a period of five years, the amount of only $20,000 for an additional five years, and the amount of only $12,000 per month thereafter until the death of either party or the remarriage of the plaintiff; (2) directed the defendant to pay basic child support for the parties' youngest child in the sum of only $4,611 per month and only 93% of the costs of the extracurricular activities of that child; and (3) directed the plaintiff to reimburse the defendant the amount of $7,500 toward the total costs of the trial transcripts.
On February 28, 2019, a money judgment was entered in favor of the plaintiff and against the defendant in the principal sum of $110,000. The defendant appeals.
The Supreme Court properly granted that branch of the plaintiff's motion which was to direct the defendant to reimburse her the sum of $110,000, representing money allegedly due to the plaintiff pursuant to the June 2017 stipulation. "A stipulation of settlement is a contract, enforceable according to its terms" (Stein v Stein, 130 AD3d 604, 605; see Klein v Klein, 134 AD3d 1066, 1068). Here, the June 2017 stipulation provided that the defendant was to pay the plaintiff the sum of $2.1 million, less two specified credits: one credit in the amount of $75,000 for jewelry being retained by the plaintiff, and one credit for the defendant's pay-off of the outstanding mortgage on the former marital residence. The June 2017 stipulation also prohibited a claw back or reallocation of counsel fees and expert fees already paid. Since the defendant deducted an additional credit of $110,000 which was not permitted by the parties' stipulation, the court properly directed the defendant to reimburse the plaintiff that amount.
Contrary to the plaintiff's contention, the Supreme Court properly denied that branch of her motion which was for an award of $7,542.41 in alleged arrears for pendente lite maintenance and child support, as the record establishes that the defendant was not in arrears on his pendente lite maintenance and child support obligations.
In determining a party's maintenance and child support obligations, "[a] court need not rely upon a party's own account of his [or her] finances, but may impute income based upon the party's past income or demonstrated future potential earnings" (Duffy v Duffy, 84 AD3d 1151, 1151-1152 [internal quotation marks omitted]; see Wesche v Wesche, 77 AD3d 921, 923; Steinberg v Steinberg, 59 AD3d 702, 705). "The court may impute income to a party based on his or her employment history, future earning capacity, educational background, or money received from friends and relatives" (Duffy v Duffy, 84 AD3d at 1152 [internal quotation marks omitted]; see Matter of Rohme v Burns, 92 AD3d 946, 947; Wesche v Wesche, 77 AD3d at 923). "Where a party's account is not believable, the court may impute a true or potential income higher than alleged" (Wesche v Wesche, 77 AD3d at 923; see Duffy v Duffy, 84 AD3d at 1152). "The court has considerable discretion in determining whether income should be imputed to a party and the court's credibility determinations are accorded deference on appeal" (Matter of Monti v DiBedendetto, 151 AD3d 864, 866; see Matter of Kiernan v Martin, 108 AD3d 767, 768). Here, contrary to the defendant's contention, the Supreme Court providently exercised its discretion by imputing to him $800,000 in annual income when computing his maintenance and child support obligations (see Muldowney-Walsh v Desroches, 167 AD3d 1022, 1024; R.S. v B.L., 151 AD3d 609, 610).
"The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts" (Culen v Culen, 157 AD3d 926, 928; see Carroll v Carroll, 125 AD3d 710, 711). "In cases, like this one, commenced prior to amendments to the Domestic Relations Law effective January 23, 2016 (see L 2015, ch 269, § 4), factors to be considered include '"the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties"'" (Kaufman v Kaufman, 189 AD3d 31, 69-70, quoting Gorman v Gorman, 165 AD3d 1067, 1069, quoting Gordon v Gordon, 113 AD3d 654, 655; see Domestic Relations Law former § 236[B][6][a]). Here, considering the relevant factors, including the ages of the parties, the lengthy duration of the marriage, the parties' respective present and future earning capacities, the distribution of marital property, as well as the parties' marital standard of living, the Supreme Court providently exercised its discretion in awarding the plaintiff nondurational maintenance in the sum of $25,000 per month for the first five years, reduced to the sum of $20,000 per month for an additional five years until the plaintiff reaches age 65, and the sum of $12,000 per month thereafter until the death of either party or the plaintiff's remarriage (see Summer v Summer, 85 NY2d 1014, 1016).
In computing child support, the Supreme Court improvidently exercised its discretion [*2]by imputing to the plaintiff $62,231.46 in annual income. While the court has considerable discretion in imputing income, the imputed income figure must be rationally based (see Tzanopoulos v Tzanopoulos, 18 AD3d 464, 465). Here, the imputed income amount was entirely speculative, based upon assumptions as to the plaintiff's purported investment return from her distributive award, unsupported by evidence in the record. It is undisputed that the plaintiff left the workforce over 30 years ago at the defendant's request. Therefore, annual income should not have been imputed to the plaintiff in determining child support.
The Supreme Court did not err in setting the combined parental income cap for child support purposes at $350,000. "'The [Child Support Standards Act] sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling'" (Matter of Conway v Gartmond, 162 AD3d 1013, 1015, quoting Matter of Freeman v Freeman, 71 AD3d 1143, 1144). However, where "the combined parental income exceeds the [statutory cap], the court shall determine the amount of child support for the amount of the combined parental income in excess of such dollar amount through consideration of the factors set forth in [Domestic Relations Law § 240(1-b)(f)] and/or the child support percentage" (Domestic Relations Law § 240[1-b][c][3]; see Matter of Levin v Blum, 167 AD3d 609, 611; Matter of Conway v Gartmond, 162 AD3d at 1015; Beroza v Hendler, 109 AD3d 498, 501-502). Here, the court applied the relevant factors set forth in Domestic Relations Law § 240(1-b)(f) and sufficiently articulated its reasons for determining that the combined parental income should be capped at $350,000. We conclude that the court did not improvidently exercise its discretion in applying the statutory child support percentage of 17% to the amount of the capped combined parental income in excess of the then-applicable baseline of $148,000. However, since no income should be attributed to the plaintiff, the defendant's purported pro rata share of the parties' combined income is 100% (see id. § 240[1-b][c][3]). Utilizing the defendant's correct pro rata share of 100%, the defendant's basic child support obligation amounts to $59,500 per year, or $4,958.33 per month. Accordingly, we modify the judgment of divorce to direct the defendant to pay the plaintiff $4,958.33 per month in basic child support for the parties' youngest child.
In addition to the defendants's basic child support obligation, the Supreme Court directed the defendant to pay his pro rata share of the costs of the extracurricular activities of the parties' youngest child, including summer camp. Although such expenses may be appropriately considered as an "add on expense" for child care (see Spinner v Spinner, 188 AD3d 748, 752; Micciche v Micciche, 62 AD3d 673, 673; Matter of Maiolica v Maiolica, 30 AD3d 603; Sieratzki v Sieratzki, 8 AD3d 552, 554), the plaintiff failed to establish an entitlement to child care expenses (see Michael J.D. v Carolina E.P., 138 AD3d 151, 157). Although the defendant acknowledged that it was in the child's best interest to attend summer camp, and, during the marriage, all of the parties' children attended summer camp, the child's standard of living during the marriage was taken into account in awarding basic child support using the defendant's income in excess of the statutory cap. Expenses for extracurricular activities are not specifically delineated as an "add-on" under the Child Support Standards Act (see Klauer v Abeliovich, 149 AD3d 617, 620). The substantial basic child support award should be sufficient to cover the child's expenses, including her extracurricular activities.
The parties' remaining contentions are without merit.
BARROS, J.P., CONNOLLY, HINDS-RADIX and MILLER, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court