Varnit v Varnit (2024 NY Slip Op 06557)

Varnit v Varnit

2024 NY Slip Op 06557

Decided on December 24, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
CHERYL E. CHAMBERS
HELEN VOUTSINAS
LAURENCE L. LOVE, JJ.

2022-03333
 (Index No. 53953/18)

[*1]Michael Varnit, appellant, 
v
Shelly Varnit, respondent.

Hasapidis Law Offices, South Salem, NY (Annette G. Hasapidis of counsel), for appellant.
Riebling & Payton, PLLC, Mount Kisco, NY (Stephen J. Riebling, Jr., of counsel), for respondent.
Lisa F. Colin, White Plains, NY, attorney for the child.

DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals from a judgment of divorce of the Supreme Court, Westchester County (Nancy Quinn Koba, J.), dated March 31, 2022. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated December 20, 2021, made after a nonjury trial, (1) awarded the plaintiff certain parental access, (2) declined to award the plaintiff final decision-making authority as to the religious upbringing of the parties' child and awarded the defendant final decision-making authority as to the medical needs of the parties' child, (3) awarded the defendant maintenance in the sum of $1,416 per month for a period of 18 months, (4) awarded the defendant child support in the sum of $1,852 per month commencing January 1, 2022, and continuing through June 30, 2023, and in the amount of $2,093 per month commencing July 1, 2023, until the emancipation of the parties' child, (5) directed the plaintiff to pay 100% of the outstanding credit card debt and declined to award the plaintiff a credit for 50% of the sum paid to reduce the credit card debt during the pendency of the action, (6) declined to award the plaintiff a credit for the sale of certain stocks, (7) awarded the defendant 50% of the plaintiff's deferred compensation account, and (8), in effect, denied the plaintiff's motion for contempt.
ORDERED that the judgment is modified, on the facts and in the exercise of discretion, by deleting the provision thereof directing that the plaintiff shall have parental access with the parties' child during the school year on alternate weekends commencing from Friday after pick-up at school through Monday at drop-off at school, overnight parental access on alternate Wednesdays from pick-up at school to drop-off at school on Thursday morning, and every other Wednesday from pick-up at school to drop-off at the defendant's residence at 7:00 p.m., and substituting therefor a provision directing that (1) the plaintiff shall have parental access with the child every Monday from pick-up at school, or at 9:00 a.m. when school is not in session, until Tuesday at 7:30 p.m., (2) the defendant shall have parental access with the child every Tuesday beginning at 7:30 p.m. until Thursday at 7:30 p.m., and (3) the parties shall have parental access with the child on alternate weekends, with the weekends being defined as beginning at 7:30 p.m. on Thursday and ending at drop-off at school on Monday, or at 9:00 a.m. when school is not in session; [*2]as so modified, the judgment of divorce is affirmed insofar as appealed from, without costs or disbursements.
The parties were married on May 10, 2010, and have one child together. In March 2018, the plaintiff commenced this action for a divorce and ancillary relief. In February 2021, and continuing through June 2021, the Supreme Court conducted a nonjury trial, inter alia, on the issues of custody, maintenance, child support, and equitable distribution, and on the plaintiff's motion for contempt in connection with the defendant's alleged violation of an interim order dated September 8, 2020, regarding parental access on Thanksgiving in 2020. Following the nonjury trial, the court entered a judgment of divorce dated March 31, 2022, among other things, awarding the plaintiff parental access with the parties' child during the school year on alternate weekends commencing from Friday after pick-up at school through Monday at drop-off at school, overnight parental access on alternate Wednesdays from pick-up at school to drop-off at school on Thursday morning, and every other Wednesday from pick-up at school to drop-off at the defendant's residence at 7:00 p.m., (2) declined to award the plaintiff final decision-making authority as to the religious upbringing of the parties' child and awarded the defendant final decision-making authority as to the medical needs of the child, (3) awarding the defendant maintenance in the sum of $1,416 per month for a period of 18 months, (4) awarding the defendant child support in the sum of $1,852 per month commencing January 1, 2022, and continuing through June 30, 2023, and in the amount of $2,093 per month commencing July 1, 2023, until the emancipation of the parties' child, (5) directing the plaintiff to pay 100% of the outstanding credit card debt and declining to award the plaintiff a credit for 50% of the sum paid to reduce the credit card debt during the pendency of the action, (6) declining to award the plaintiff a credit for the sale of certain stocks, (7) awarding the defendant 50% of the plaintiff's deferred compensation account, and (8), in effect, denying the plaintiff's motion for contempt. The plaintiff appeals.
"'The court's paramount concern when making any custody determination is the best interests of the children, as determined upon a consideration of the totality of the circumstances'" (Matter of Abraham v Etienne, 218 AD3d 771, 771, quoting Cohen v Cohen, 177 AD3d 848, 850). "'In determining a child's best interest, the court must consider, among other things, (1) the parental guidance provided by the custodial parent; (2) each parent's ability to provide for the child's emotional and intellectual development; (3) each parent's ability to provide for the child financially; (4) each parent's relative fitness; and (5) the effect an award of custody to one parent might have on the child's relationship with the other parent'" (Matter of Patten v Patten, 206 AD3d 811, 811, quoting Matter of Williamson v Williamson, 182 AD3d 604, 605-606). "In reviewing custody and parental access determinations, this Court's authority is as broad as that of the hearing court" (Matter of Ednie v Haniquet, 185 AD3d 1029, 1030). However, since the Supreme Court's determination "depends to a great extent upon its assessment of, among other things, the credibility of the witnesses, the court's determination should not be disturbed unless it lacks a sound and substantial basis in the record" (Matter of Handakas v Bardatsos, 215 AD3d 840, 842).
"The extent to which the noncustodial parent may exercise [parental access] is a matter committed to the sound discretion of the hearing court, to be determined on the basis of the best interests of the child" (Chamberlain v Chamberlain, 24 AD3d 589, 592). In the absence of "extraordinary circumstances, such as where parental access would be detrimental to the child's well-being, a non-custodial parent has a right to reasonable parental access privileges" (Matter of Yegnukian v Kogan, 179 AD3d 1082, 1083). Here, we find that the parental access schedule awarding the plaintiff parental access with the school-aged child only one day per week effectively deprives the plaintiff of significant quality time with the child, especially where, as here, the evidence failed to demonstrate that the parental access schedule in place prior to the entry of the judgment of divorce would be harmful to the child or that the plaintiff forfeited his right to parental access (see Hepheastou v Spaliaras, 201 AD3d 793, 794). Accordingly, we modify the parties' parental access schedule as follows: (1) the plaintiff shall have parental access with the child every Monday from pick-up at school, or at 9:00 a.m. when school is not in session, until Tuesday at 7:30 p.m., (2) the defendant shall have parental access with the child every Tuesday beginning at 7:30 p.m. until Thursday at 7:30 p.m., and (3) the parties shall have parental access with the child on alternate weekends, with the weekends being defined as beginning at 7:30 p.m. on Thursday and [*3]ending at drop-off at school on Monday, or at 9:00 a.m. when school is not in session.
"When joint custody is not possible because of the antagonistic relationship between the parties, it may be appropriate, depending upon the particular circumstances of the case, to award some custodial decision-making authority to the noncustodial parent" (Jacobs v Young, 107 AD3d 896, 896-897 [citations omitted]). "'The division of authority is usually made either somewhat evenly, in order to maintain the respective roles of each parent in the child's life or, although unevenly, in a manner intended to take advantage of the strengths [or] demonstrated ability' of each parent" (Matter of Steingart v Fong, 156 AD3d 794, 796, quoting Chamberlain v Chamberlain, 24 AD3d at 592). Here, contrary to the plaintiff's contention, under the circumstances, there is no evidence in the record that the well-being of the child is threatened by declining to intrude on either party's right to educate the child in their respective religions or by awarding the defendant final decision-making authority over the child's medical needs (see Matter of Waldron v Dussek, 48 AD3d 471, 472-473). Based on the totality of the circumstances, the Supreme Court's determination had a sound and substantial basis in the record and was in the best interests of the child (see Matter of Ring v Ring, 15 AD3d 406, 407).
"'The amount and duration of spousal maintenance is an issue generally committed to the sound discretion of the trial court and each case is to be resolved upon its own unique facts and circumstances'" (Bari v Bari, 200 AD3d 835, 837, quoting Fishman v Fishman, 186 AD3d 1199, 1200). "The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting" (Kattan v Kattan, 202 AD3d 771, 776 [internal quotation marks omitted]; see Sansone v Sansone, 144 AD3d 885, 886). Here, contrary to the plaintiff's contentions, considering the relevant factors, including the present and future earning capacities of the parties, the reduced earning capacity of the defendant as a result of having foregone career opportunities during the marriage, and the defendant's ability and the time needed to become self-supporting, the duration of the Supreme Court's maintenance award was a provident exercise of discretion (see Domestic Relations Law § 236[B][6][e][1], [f][2]; Bari v Bari, 200 AD3d at 837).
"The Child Support Standards Act [(Domestic Relations Law § 240[1-b])] sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling" known as the statutory cap (Matter of Butta v Realbuto, 214 AD3d 973, 974 [internal quotation marks omitted]; see Matter of Freeman v Freeman, 71 AD3d 1143, 1144). "'Where the combined parental income exceeds the statutory cap, the court, in fixing the basic child support obligation on income over the statutory cap, has the discretion to apply the factors set forth in Domestic Relations Law § 240(1-b)(f), or to apply the statutory percentages, or to apply both'" (Surage v Surage, 224 AD3d 860, 861-862, quoting Moradi v Buhl, 201 AD3d 928, 929). "However, the [trial court] must articulate an explanation of the basis for its calculation of child support based on parental income in excess of the statutory cap" (Matter of Butta v Realbuto, 214 AD3d at 975; Matter of Peddycoart v MacKay, 145 AD3d 1081, 1084). "'This articulation should reflect a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage'" (Matter of Monaco v Monaco, 214 AD3d 659, 662, quoting Matter of Peddycoart v MacKay, 145 AD3d at 1084).
Here, the Supreme Court engaged in a thorough analysis of the parties' financial situation, including the plaintiff's considerable income, the income disparity between the parties, and the standard of living that the child would have enjoyed had the marriage not been dissolved. Under these circumstances, the court providently exercised its discretion in basing the calculation of child support on parental income in excess of the statutory cap (see Matter of Yaroshevsky v Yaroshevsky, 219 AD3d 609, 612).
"Equitable distribution presents issues of fact to be resolved by the trial court and should not be disturbed on appeal unless shown to be an improvident exercise of discretion" (Kattan v Kattan, 202 AD3d at 773 [internal quotation marks omitted]). "Equitable distribution does not necessarily mean equal distribution" (Cravo v Diegel, 163 AD3d 920, 922 [internal quotation marks [*4]omitted]).
"Where separate property has been commingled with marital property, there is a presumption that the commingled funds constitute marital property" (Scher v Scher, 91 AD3d 842, 846). "To overcome a presumption that commingled property is marital property, the party asserting that the property is separate must establish by clear and convincing evidence that the property originated solely as separate property and the joint account was created only as a matter of convenience, without the intention of creating a beneficial interest" (Glessing v Glessing, 212 AD3d 783, 784). Further "[t]he matrimonial courts may, but are not required to, give a spouse who made a separate property contribution to the creation of a marital asset a credit for such contribution before determining how to equitably distribute the remaining value of the asset" (Kaufman v Kaufman, 189 AD3d 31, 61).
Here, contrary to the plaintiff's contentions, he failed to overcome the presumption that the funds obtained from a sale of stocks and deposited into a joint account, which he contended he used toward the purchase of the marital home, were marital property subject to equitable distribution. The Supreme Court, therefore, providently declined to award the plaintiff a credit for those funds (see Dermigny v Dermigny, 23 AD3d 429, 431). Furthermore, the court providently exercised its discretion in awarding the defendant one half of the plaintiff's deferred compensation account, as the plaintiff failed to provide sufficient evidence of what portion of that account was his separate property (see Novick v Novick, 214 AD3d 995, 999).
The Supreme Court providently exercised its discretion in directing the plaintiff to pay 100% of the outstanding credit card debt and in declining to award the plaintiff a credit for 50% of the sum paid to reduce the credit card debt during the pendency of the action. The evidence did not establish that the credit card debt constituted marital debt that should be shared equally by the parties, as opposed to a debt incurred by the plaintiff for his personal expenses (see Bernholc v Bornstein, 72 AD3d 625, 628).
"A motion to punish a party for civil contempt is addressed to the sound discretion of the [hearing] court" (Matter of Philie v Singer, 79 AD3d 1041, 1042 [internal quotation marks omitted]). "'To prevail on a motion to hold a party in civil contempt, the movant must establish by clear and convincing evidence (1) that a lawful order of the court was in effect, clearly expressing an unequivocal mandate, (2) the appearance, with reasonable certainty, that the order was disobeyed, (3) that the party to be held in contempt had knowledge of the court's order, and (4) prejudice to the right of a party to the litigation'" (Anonymous 2011-3 v Anonymous 2011-4, 219 AD3d 558, 559, quoting Bauman v Bauman, 208 AD3d 624, 625-626). Here, the Supreme Court did not improvidently exercise its discretion in determining that the plaintiff failed to establish by clear and convincing evidence that the defendant had knowledge of the terms of a clear and unequivocal mandate or that he was prejudiced by the defendant's alleged violation of the September 8, 2020 interim order (see Matter of Marotta v Marotta, 218 AD3d 468, 470).
The plaintiff's remaining contentions are without merit.
BRATHWAITE NELSON, J.P., CHAMBERS, VOUTSINAS and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court